GEORGE v. HABER.

1. EQUITY—PLEADING—MOTION TO DISMISS.
    Well-pleaded averments of fact in a bill of complaint must be accepted as true in disposing of a motion to dismiss.

2. SAME—PLEADING—EXHIBITS.
    Provisions of agreement, setting up a trust for payment of pensions to employees covered by contract between union and employer, must prevail as against inconsistent allegations in the pleading.

3. SAME—TRUSTS—PLEADING.
    Averment in bill of complaint seeking to terminate retirement trust, set up by employer for employees pursuant to agreement with their union, that trust agreement was negotiated and ratified on the representation of the company that it would continue the manufacture of automobiles at its then place of manufacture *held,* too general to require consideration, where there was no showing as to who made the statement on behalf of the company or as to the time when, and the circumstances under which, it was made.

4. APPEAL AND ERROR—PLEADING—TERMINATION OF TRUST.
    General allegation that plaintiffs feared trustees of retirement trust would devise some alternative plan or scheme incon-

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Pleading § 332.
[2] 19 Am Jur, Equity § 235.
[3] 41 Am Jur, Pleading § 74.
[5-7] 54 Am Jur, Trusts §§ 70, 83, 85.

sistent with the true intent and purpose of the agreement, and that the provisions of the trust agreement relative to its termination were not applicable is not considered on appeal in suit to terminate trust, where no facts were set forth as a basis for any fear on plaintiff's part.

5. TRUSTS—RETIREMENT TRUST—TERMINATION.

Fact that retirement trust contained provisions for its termination without specifying any reasons for termination and which provisions are claimed to be inapplicable after employer ceased doing business at place operations were being conducted when trust was set up *held,* an insufficient reason for terminating trust and dividing funds among employees, where underlying contract set forth the purposes of the trust, that the funds therein were not a vested interest of any employee except for retirement or retirement disability benefits and employees were not to receive any payments in lieu of the benefits thereunder even upon termination of the trust.

6. SAME—TERMINATION.

A trust may not be terminated prior to the accomplishment of its stated purpose, where the purpose is a valid purpose and is capable of being accomplished.

7. SAME—RETIREMENT TRUST—TERMINATION—INTENT.

Plaintiffs, some of the employees or former employees of employer who had set up a retirement trust, and who seek termination of the trust after the employer drastically curtailed its manufacturing operations in this State *held,* not entitled to such relief, where the purpose of the trust was a valid one and is also capable of being fulfilled and plaintiffs' plan of termination is not consistent with the provisions of the trust and the intent of the parties to the agreement.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 7, 1955. (Docket No. 7, Calendar No. 46,495.) Decided October 3, 1955.

Bill by Aloysius George and 1,103 others against William Haber and 4 others, as trustees of the Kaiser-Frazer UAW-CIO Retirement Fund, to terminate trust and distribute residue. Decree dismissing bill. Plaintiffs appeal. Affirmed.

*Goodman, Crockett, Eden & Robb (George W. Crockett, Jr.,* of counsel), for plaintiffs.

*George Brett Shaeffer (Earl R. Gilman,* of counsel), for defendants.

*Amicus Curiae:*

*Harold A. Cranefield (Leonard Lesser,* of counsel), for International Union, UAW-CIO.

CARR, C. J. This is a suit in equity to terminate a trust and for incidental relief. Said trust was established pursuant to agreements between the Kaiser-Frazer Corporation, a corporation organized under the laws of Nevada, and engaged in the production of automobiles and automobile and aircraft parts in Michigan, hereinafter referred to as the company, and the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, affiliated with the Congress of Industrial Organization, designated hereinafter as the union. The arrangement in question became effective from and after June 15, 1949. The fund was created by the company which paid in 6 cents per hour for the time that each of its employees, members of the union, received compensation for labor on behalf of the company after the date mentioned.

It is claimed that at the time of the filing of the amended bill of complaint on August 12, 1954, there had been accumulated in the trust fund the sum of approximately $6,000,000. The purpose of the parties concerned in arranging for the fund was to provide pensions for employees covered by the agreements, on retirement by reason of old age or permanent incapacity for gainful employment, following the rendition of credited services as specified.

Some pensions were being regularly paid at the time the instant proceeding was brought.

In November, 1953, as it is claimed, the company disposed of its production facilities at Willow Run, Michigan, its principal place of business, and curtailed operations at other plants in this State. Claiming that such action was not in contemplation of the parties at the time of the making of the agreements for the retirement trust fund, the plaintiffs brought this action, asserting that because of the change in circumstances the trust fund should be terminated and that after making provision for the payment of benefits to employees retired prior to such change the balance of the fund should be divided among the remaining employees covered by the agreements between the union and the company "in proportion to the number of hours for which they were employed." The so-called "retirement trust agreement" was incorporated in the bill of complaint by reference and made a part thereof. The prayer for relief asked for the entering of a final decree in accordance with the claim of the plaintiffs. The defendants, the present trustees of the trust fund in question, moved to dismiss the bill of complaint, claiming that the pleading did not allege a cause of action in equity. Following a hearing said motion was granted by the trial court, and from the order entered plaintiffs have appealed.

In considering the question presented on the appeal we have in mind the general rule that well-pleaded averments of fact in the bill of complaint must be accepted as true. Such rule does not extend to conclusions or to statements obviously resting merely on opinion. As before noted, the agreement creating the fund was incorporated in the bill of complaint by reference and its provisions must prevail as against inconsistent allegations in the pleading. *Dodge* v. *Detroit Trust Co.,* 300 Mich 575, 596. After

considering the agreements under which the trust was created the trial judge came to the conclusion, that plaintiffs were not entitled to maintain the action on the theory of a "class suit," and that the court of equity, in view of the express agreements of the parties, could not grant the relief sought.

The bill of complaint alleged that the plaintiffs, were employees or former employees of the company and as such were covered by the provisions of the retirement trust agreement. It was further alleged that at the time of the making of such agreement there were approximately 11,800 employees of the company at its Michigan plants. The record indicates that 1,104 signed the bill of complaint under, which the termination of the trust was sought. It was further averred that the trust agreement was negotiated and ratified on the representation of the company that it would continue the manufacture of automobiles at Willow Run. There is no showing as to who made such statement on behalf of the company or as to the time when, and the circumstances under which, it was made. Such averment must be treated as too general to require consideration. The pleading referred to specific provisions of the contract between the union and the company, and alleged that the provisions for termination of the agreement as set forth therein are not applicable under the altered circumstances. Plaintiffs also made the general allegation that they feared the trustees of the fund would devise some alternative plan or scheme inconsistent with the true intent and purpose of the agreement unless restrained by order of the court. However, no facts were set forth as a basis for any such fear, or belief, on plaintiffs' part.

In view of the relief sought by the bill of complaint consideration of the agreements made by the union, and the company is required. Under date of November 18, 1949, a contract, declared to be supplemental

to prior agreements, dated July 20, 1949, and November 4, 1949, between the parties, was executed. Such agreement provided in specific terms for the creation of the retirement fund, stating that it should be noncontributory and financed by the company in the manner specified. Contributions to the fund by the company were expressly covered. Section 4 of the agreement of November 18, 1949, declared that the title to all moneys paid into the retirement fund should be vested exclusively in the trustees thereof, and it was further provided that:

"The moneys to be paid by the company into the said retirement fund shall not constitute or be deemed wages, salary or compensation due to any individual employee.  *  *  *  Neither shall any such employees have any vested rights hereunder to any of the moneys of the retirement fund."

Section 5 of the agreement declared it to be the intention of the parties that the retirement fund "shall be such as will continuously qualify as an irrevocable pension trust under the provisions of section 165 of the internal revenue code.*" Administration of the fund by a board of trustees was directed and the purpose of the creating of the fund expressly declared. It was further specified that the supplemental agreement, insofar as it pertained to pensions, should continue in effect for a period of 5 years from November 11, 1949. The parties were each given the privilege of requesting renegotiation of such agreement, with reference to pensions, upon 60 days' written notice to the other party immediately in advance of the expiration date. As further indicating the intent of the parties, the agreement set forth that upon the expiration thereof and the failure of the parties to renew it or continue it in another form, the fund should continue, and the board of

---

* 26 USCA, § 165.—REPORTER.

trustees was directed to designate a proper agency to function under the agreement and in accordance with its terms.

The contract of November 18, 1949, contemplated ratification by the members of certain designated local unions. In the event of such action being taken, the parties intended the execution of a retirement trust agreement. Apparently the action of the union and the company met with the approval of the members of the particular locals in question, and under date of June 1, 1950, a further contract was made referring to the retirement fund and setting forth specifically the details of the agreement of the parties with reference to the establishment, control, and use of such fund. The matter of retirement benefits was covered in detail. Article 10 of the contract, of special significance in the present controversy, reads as follows:

"ARTICLE 10—No VESTED INTEREST: Neither the company nor any employee of the company, nor the union nor any member of the union, nor any person claiming by, through or under any of them, shall have any right, title or interest in or to the retirement fund, or any part thereof, excepting the right of the employee to retirement benefits or retirement disability benefits as provided hereunder. *No employee shall receive any part of the company payments instead of such retirement benefits or retirement disability benefits, nor receive a cash consideration in lieu of such benefits either upon the termination of this retirement trust agreement or his withdrawal through severance of employment or otherwise.*" (Emphasis supplied.)

The foregoing language indicates rather conclusively that the parties to the contract, by which plaintiffs as members of the union were bound, had in mind that the fund should not be diverted from its intended use, and that the rights of the employees

of the company were limited to retirement or disability benefits in accordance with the plan outlined. Consistent with such intent are the provisions with reference to termination of the retirement trust agreement. In this regard it was specified that said agreement should continue in force and effect during the life of the prior agreement of November 18, 1949, and that in the event of termination the funds, after providing for necessary expenses, should be used to assure the continued payment of benefits to employees who were retired at the time of such termination, for benefits to employees who were 65 or more years of age, and for benefits to employees having 5 or more years of credited service at the time of termination, upon such conditions as the trustees found to be equitable. The trustees were given a certain measure of discretion with reference to the procedure to be followed, subject, however, to the condition that "no change shall be effected in the order of precedence and basis for allocation above established, nor shall any allocation be made contrary to the provisions of article 10."

Appellants contend that it was not contemplated by the parties in the execution of the agreements providing for the trust fund that the company would terminate active operations at the Willow Run plant, and that such action created a situation justifying the exercise of equitable jurisdiction to terminate the trust and dispose of the fund in a manner not contemplated by the parties in establishing it. Whether the union or the company, or both, had in mind a possible termination of operations may be open to question, but it does clearly appear that it was deemed expedient to limit the agreement to a 5-year period, with opportunity for continuation under the same plan, or perhaps under a modified arrangement. The provisions as to the duty of the trustees in the event of termination leave no ques-

tion as to the manner in which the contracting parties intended the moneys remaining in the fund to be used. The failure to set forth possible reasons for termination indicates that the parties did not consider it necessary to be specific with reference thereto, and that regardless of the reasons bringing about such situation the trust moneys were to be used to carry out the specific purposes for which the fund was created.

No reason is made to appear by the averments of the bill of complaint why the intent of the parties responsible for the creating of the retirement trust fund cannot be carried out. The jurisdiction of equity is not invoked here for the purpose of protecting the fund or preventing a use thereof for a purpose, or purposes, at variance with the plan under which it was established. It is the position of the plaintiffs, in the final analysis, that the plan outlined by the union representing plaintiffs, and the company, should be altered to the end that plaintiffs may receive immediately benefits from the fund under a substituted arrangement at variance with the plan and procedure contemplated by the contracts above discussed.

On behalf of appellants attention is directed to the decision of this Court in *City of Detroit* v. *Detroit United Railway,* 226 Mich 354. The facts there involved, however, were not analogous to those in the case at bar. The plaintiff in that case purchased from the defendant Detroit United Railway the city lines owned and operated by the company as a part of its system. Prior thereto a trust mortgage had been given to the Guaranty Trust Company of New York covering all the property of the system, including the street railways within the city and the interurban railways outside the municipal boundaries. The bill of complaint was filed by the city, after its purchase, for the separation and allocation of the

mortgage liens, to the end that it might be protected in the ownership and use of the property that it had acquired. It was held that the change in the situation with reference to the property covered by the mortgage justified invoking the aid of a court of equity to remedy the situation to the end that the rights of the parties concerned should be preserved. A decree was entered accordingly. Such decree did not result in terminating any trust relation or in diverting trust funds. Rather, it was directed to the alleviation of the situation by allocating the liens in such manner as to protect plaintiff's rights. It will be noted that in the case at bar the appellants, under the express terms providing for the creation of the trust fund, have no right or interest in such fund. Rather they, like other employees of the company, were beneficiaries only to the extent of the pension or disability benefits to which they might become entitled.

In *Young* v. *Young*, 255 Mich 173 (77 ALR 963), a trust was created by will, certain property being held therein without power of sale. The building on the property was destroyed by fire. The trustees lacked funds to rebuild, and under the will could not mortgage property. Under such circumstances the land became a liability rather than an asset. Thereupon the trustees filed a bill in equity seeking authority from the court to sell the property. A decree granting such right was affirmed by this Court on the ground that an unusual exigency had arisen, and that the protection of the trust fund for the heirs rendered it necessary to grant relief. The court was not asked to terminate the trust, but merely to permit the handling of certain property therein in a manner that would not prejudice the rights of beneficiaries for whose benefit the testator had created the trust.

The decision in the *Young Case* was cited with approval, and followed, in *Evans* v. *Grossi,* 324 Mich 297. In that case the trustees found it impossible to comply with the direction of a will creating a trust with reference to the payment to a certain beneficiary who was a resident of a country with which the United States was then at war. It was held that under such circumstances the payment was not a prerequisite to the termination of the trust in the manner provided by the will. The relief sought by the trustees was accordingly granted.

In *Rose* v. *Southern Michigan National Bank,* 255 Mich 275, it was held that the court of equity was without power to terminate a trust, having all the essentials of a valid spendthrift trust, created by will. It was recognized that some trusts are of such character that they may not be terminated until their purposes have been accomplished. In view of the incidents established by the contracts under which the trust fund in the instant case was created, and the declared purposes thereof, such principle must be deemed applicable here. In other words, the trust may not be terminated prior to the accomplishment of its stated purposes.

In *Post* v. *Grand Rapids Trust Co.,* 255 Mich 436, the trial court was petitioned to direct the trustees of funds subject to the provisions of a will to make advances to permit the continued education of petitioner's son, who had passed the age of 21. The trial court granted the order sought but this Court set it aside on the ground that the circumstances in the case did not present such an unusual exigency as to justify deviation from the express terms of the will.

In *Hay* v. *LeBus,* 317 Mich 698, 709, the decision in the *Rose Case, supra,* was followed. After a discussion of the facts involved, it was said:

"We might well rest decision herein on the settled law of this State as announced in the *Rose Case, supra*. However, we do not intend thereby to imply that spendthrift trusts are the only type of trusts which may not be terminated prior to the time fixed for termination in the trust instrument."

The Court (pp 709, 710) cited with approval the following statement of the law as set forth in 2 Perry, Trusts and Trustees (7th ed), § 920, p 1561:

" 'Although a trust may not have ceased by expiration of time, and although all its purposes may not have been accomplished, yet if all the parties who are or may be interested in the trust property are in existence, and *sui juris*, and if they all consent and agree thereto, and if there is no ultimate purpose requiring its continuance, courts of equity may decree the determination of a trust and the distribution of the trust fund among those entitled. But if it appears that the creator of the trust had in view a valid purpose which may be defeated by a termination of the trust before the time set by him the courts will not decree a termination so long as the purpose is capable of being accomplished.' "

Under the factual situation presented here the trial court properly denied the relief sought by plaintiffs. Equity may grant relief when necessary to protect the carrying out of the purposes of a trust or to prevent the destruction of, or injury to, trust funds, in the event that altered circumstances create an exigency justifying intervention. Such is not the situation in the case at bar. Plaintiffs are not asking for the protection of the trust fund but, rather, seek the termination of the trust and the distribution of the moneys remaining in the fund in a manner not consistent with the plan and purpose of the parties to the agreements. Such purpose may be accomplished in the manner provided therefor. The Court may not re-write the contracts here involved.

Discussion of other questions argued by counsel in their briefs is not required. The order of the trial court is affirmed, with costs to defendant trustees.

BUTZEL, SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.