The **CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF MARY-LAND**, a body corporate,

v.

**COMMUNICATIONS WORKERS OF AMERICA**, an unincorporated labor association.

Civ. No. 15429.

United States District Court
D. Maryland.
March 11, 1965.

Joseph Bernstein, Baltimore, Md., and William W. Watson, Washington, D. C., for plaintiff.

Claude L. Callegary, Baltimore, Md., and Charles V. Koons, Washington, D. C., for defendant.

THOMSEN, Chief Judge.

The complaint herein seeks a declaratory judgment that the bargaining agreement between plaintiff (Company) and defendant (Union) does not require plaintiff to submit to arbitration grievances challenging the propriety of certain disciplinary action which plaintiff took with respect to two of its employees. A cross-claim seeks a judgment compelling the Company to arbitrate the grievances. The Court has jurisdiction under 29 U. S.C.A. § 185 and 28 U.S.C.A. §§ 2201,

2202. Black-Clawson Co., Paper Machine Division v. International Ass'n of Machinists Lodge 355, 2 Cir., 313 F.2d 179 (1962).

The parties are agreed that the propriety of the disciplinary action taken by paintiff against the two employees is not an issue in this case. The sole issue is whether the grievances are arbitrable under Article 7, Section 1 of the collective bargaining agreement, which reads as follows:

"If the parties remain in disagreement at the conclusion of the steps provided in Article 6, then either party may submit the grievance to arbitration upon written notice to the other party served within two (2) weeks after the Company has stated its final position (in writing where required) pursuant to Article 6, Section 2(c) or after negotiations under Article 6, Section 3 have been concluded, but in any case not later than two (2) weeks after the expiration of the time allowed for settlement specified in those sections, and provided the grievance involves:

"(a) the interpretation or application of any of the terms of this Agreement not specifically excluded from arbitration; or

"(b) the dismissal (except for misconduct) of an employee who at the time of dismissal had three [1] (3) or more years of completed net credited service; or

"(c) the demotion of an employee who at the time of demotion had been continuously in the job from which demoted for at least two (2) years."

At a prior hearing in this case Judge Northrop denied defendant's motion to dismiss and ruled that the construction of Article 7, Section 1 is for the Court and not for an arbitrator. That decision is supported by recent Supreme Court decisions which state that "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); quoted in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

The facts are stipulated in a pretrial order, to which both parties have agreed. A summary of the facts will suffice here. On January 16, 1964, Lawrence B. Hawley, employed as an installer-repairman in the Plant Department of plaintiff's Silver Spring (Maryland) District and represented by defendant, was disciplined by plaintiff for allegedly improper conduct on the premises of a customer. The discipline consisted of denial of permission to work for a period of 41½ hours. On January 24 Hawley resumed his normal duties without any loss of seniority, vacation entitlement, or any other employee benefit; the only loss he suffered as a result of the discipline was the pay which he would have earned if he had worked during the 41½ hour period. On January 13, 1964, Owen H. Cubbage, also an installer-repairman, was disciplined by plaintiff for having been involved in an allegedly preventable motor vehicle accident while driving one of its vehicles. The discipline consisted of denial of permission to work for a period of one day, and his only loss was the pay which he would have earned if he had worked during that day. Neither employee applied for or received any termination allowance as a result of such discipline.

In both cases grievances were filed, and all grievance steps have been exhausted. Defendant has made demand that the grievances be submitted to arbitration, but plaintiff has refused, claiming that the grievances are not arbitrable under the collective bargaining agreement.

---

1. At the time of the disciplinary actions involved herein, both of said employees had more than three years of completed net credited service.

Plaintiff contends that the disciplinary actions involved herein constituted *suspensions,* and that neither grievance is arbitrable under any provision of the agreement, including Article 7, Section 1(b), set out above, which provides for the arbitration of certain *dismissals.* No provision of the agreement deals with suspensions.

Defendant contends that both of the disciplinary actions constituted dismissals within the meaning of Article 7, Section 1(b), and that the grievances are therefore arbitrable.

Plaintiff also contends that it is entitled to offer in evidence the bargaining history of Article 7, Section 1. See note 2 below. Defendant disputes the right of the Court to consider such evidence. Although the question has not been settled by the Supreme Court or by the Fourth Circuit, there is authority for the proposition that bargaining history is admissible in such a case as this if it does not pertain to the merits of the grievance involved.[3] It is not necessary to decide that question in this case, however, because even without the bargaining history, this Court can say "with positive assurance that the arbitration clause is not susceptible of an interpretation which covers the asserted dispute."

That is the test established by the Warrior & Gulf case, 363 U.S. at 582, 583, 80 S.Ct. at 1353, and applied by the Fourth Circuit and this Court in A. S. Abell Company v. Baltimore Typographical Union No. 12, 4 Cir., 338 F.2d 190, 193 (1964), aff'g D.Md., 230 F.Supp. 962 (1964). This Court agrees with the position taken by defendant in its brief that Article 7, Section 1 of the Agreement "is clear, unambiguous and can be interpreted objectively and sets forth the intent of the parties without the necessity of resorting to extrinsic evidence." But, for the reasons stated below, this Court does not agree with defendant that the word "dismissal" includes such disciplinary suspensions as are involved in this case.

 It was noted in Maryland Tel. Union v. Chesapeake & Potomac Tel. Co., D.Md., 187 F.Supp. 101 (1960), that the arbitration clause which is under consideration in this case (as well as in that case) is not as broad as the clause contained in many agreements, e. g. the clause in the Warrior & Gulf case. See 363 U.S. at 576, 80 S.Ct. at 1349. The clause under consideration here does not require arbitration of all disputes, only those which involve (a) the interpretation or application of any of the terms of

2. Except for irrelevant changes affecting procedure, the present language of Article 7, Section 1, first appeared in the Maryland and District of Columbia agreements between the parties in the 1951 agreements and has remained in successive agreements unchanged up to the present time. Plaintiff proposes to introduce into evidence minutes of the 1951 negotiations between the parties concerning the District of Columbia and Maryland bargaining units. It claims that these minutes would show the following facts:

That during the 1951 negotiations, the Union sought the right to arbitrate all grievances which were not settled, including those pertaining to discharges and suspensions. The Company at first wanted to limit arbitration to matters involving the interpretation or application of the other provisions of the agreement, excluding discharges and suspensions which were not and are not covered by such provisions. Later, the Company of-

fered to arbitrate certain discharges and demotions, but not suspensions. The Union accepted this offer and withdrew its request respecting the arbitration of suspensions. Thereupon, the present contractual language pertaining to arbitration was put into the 1951 contracts.

3. See A. S. Abell Company v. Baltimore Typographical Union No. 12, 4 Cir., 338 F.2d 190, 194 (1964); Communications Wkrs. of Amer. v. Pacific N. W. Bell Tel. Co., 9 Cir., 337 F.2d 455 (1964), and other Ninth Circuit cases discussed therein; Independent Petroleum Workers v. American Oil Co., 7 Cir., 324 F.2d 903 (1963), aff'd per curiam (4–4), 379 U.S. 130, 85 S.Ct. 271, 13 L.Ed.2d 333 (1964). Cf. International Union of Elec., R. & M. Workers v. General Elec. Co., 2 Cir., 332 F.2d 485 (1964), cert. den. 379 U.S. 928, 85 S.Ct. 324, 13 L.Ed. 2d 341 (1964); Association of Westinghouse Sal. Emp. v. Westinghouse Elec. Corp., 3 Cir., 283 F.2d 93 (1960).

the agreement not specifically excluded from arbitration; or (b) the dismissal (except for misconduct) of an employee who at the time of dismissal had three or more years of completed net credited service; or (c) the demotion of an employee who at the time of demotion had been continuously in the job from which demoted for at least two years.

(a) The grievance does not involve the interpretation or application of any of the terms of the agreement not specifically excluded from arbitration. It is true, as defendant states: "This case has one purpose, to interpret one word", the word "dismissal". But the *grievance* does not involve the interpretation of that word. The grievance involves the propriety of the disciplinary action. The question which depends upon the proper interpretation of "dismissal" is whether the grievance is covered by the arbitration clause of the agreement. Of course, in order to determine whether the grievance is covered by the arbitration clause, the Court must construe that clause. As the Supreme Court said in the Atkinson case, "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." 370 U.S. at 241, 82 S.Ct. at 1320. See also International Ass'n of Mach., etc. v. International Aircraft Serv., 4 Cir., 302 F.2d 808 (1962); Local U. No. 787, Inter. U. of E., R. & M. Wkrs. v. Collins Radio Co., 5 Cir., 317 F.2d 214 (1963).

(b) The word "dismissal", as used in paragraph (b) of the arbitration clause, quoted above, does not include such disciplinary suspensions as are involved in this case. The word "dismissal" is defined in Webster's Second International Dictionary as having essentially the same meaning as the word "discharge" and is not defined to embrace a "suspension". Even Webster's Third, which includes many loose usages, does not suggest that "dismissal" includes "suspension", but like its predecessor, defines "dismissal" as equivalent to "discharge". The adjudicated cases which have construed the

terms "discharge" and "dismissal" support the distinction between dismissals and suspensions. Commissioner of Labor and Industries v. Downey, 290 Mass. 432, 195 N.E. 742 (1935); Bucko v. J. F. Quest Foundry Co., 229 Minn. 131, 38 N.W.2d 223 (1949); In re New York Herald Tribune, 36 L.A. 753, (Cole, Arbitrator, 1960). See also Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).

(c) Defendant does not argue that the grievance involves a "demotion", within the meaning of paragraph (c) of the arbitration clause.

The Court will enter a judgment declaring that the bargaining agreement between the parties does not require plaintiff to submit to arbitration the grievances involved in this case. Counsel should settle such an order within ten days.