Robert G. SMITH and Willie Pierson, Plaintiffs, as a class action on behalf of themselves and all other persons so situate, namely certain employees of the Cereal Division of DCA Food Industries, et al.

v.

DCA FOOD INDUSTRIES, INC., a New York Corporation qualified to do business in Maryland, and the International Union of District 50, the United Mine Workers of America, an unincorporated Association of the District of Columbia, and Local Union No. 13128, the International Union of District 50, United Mine Workers of America, an unincorporated affiliate of District 50, above, and National Bank of Washington, District of Columbia Corporation qualified to do business in Maryland, Defendants.

Civ. No. 18237.

United States District Court
D. Maryland.
June 5, 1967.

Bernard J. Sachs, Philip H. Goodman and Goodman, Meagher & Enoch, Baltimore, Md., for plaintiffs.

J. Cookman Boyd, Jr., Baltimore, Md., and Allen Haskel, New York City, for defendant, DCA Food Industries, Inc.

H. Morton Rosen, Jr., and Abraham Levin, Baltimore, Md., for defendants, The International Union of Dist. 50, The United Mine Workers of America and Local Union No. 13128, The International Union of Dist. 50, United Mine Workers of America.

Jo V. Morgan, Jr., and Charles J. Steele, Bethesda, Md., for defendant, National Bank of Washington.

FRANK A. KAUFMAN, District Judge.

Plaintiffs, employees of the Cereal Division of DCA Food Industries, Inc. (DCA),[1] a New York corporation qualified to do business in Maryland, brought this action on April 12, 1967,[2]

1. Formerly known as Doughnut Corporation of America.

2. Subsequent to the filing of the complaint on April 12, 1967, plaintiffs filed on

May 5, 1967, an amended complaint pursuant to their right so to do under Federal Civil Rule 15 as no answer had been filed in the interim by any of the

seeking declaratory relief in connection with an alleged breach of the pension fund provisions of the collective bargaining undertakings between DCA, as the employer, and Local Union No. 13128 (the Local), a local union whose principal office is in Baltimore, Maryland, and which is an affiliate of The International Union of District 50, The United Mine Workers of America (the Union), an unincorporated association of the District of Columbia. DCA, the Local, the Union, and the National Bank of Washington (Trustee), a District of Columbia corporation qualified to do business in Maryland and the trustee under the pension fund, established by the collective bargaining agreement, are named and joined as the defendants in this case.[3] The Union and the Local are the exclusive bargaining agent for the employees (including the plaintiffs herein) in DCA's Cereal Division. DCA has filed an answer to the complaint. All of the defendants, including DCA, have filed motions to dismiss. The disposition of those motions requires this Court to determine if plaintiffs' complaint states a cause of action under section 301 of the Taft-Hartley Act, 29 U.S.C.A. § 185 (a), and whether plaintiffs are entitled to the declaratory relief they seek.[4]

defendants. The amended complaint, while the same in all material particulars as the original complaint, contains specific reference to section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185, as the jurisdictional basis of plaintiffs' actions. Both the original and the amended complaints are subdivided into a number of "cases." Case No. 1 is brought by Robert G. Smith and Willie Pierson on behalf of themselves and as a class action on behalf of others similarly situate. With regard to the "cases" numbered 2 through 51, each such case is stated as having been brought by an individual employee in his own name, there being fifty such individuals (including Smith and Pierson) and fifty such individual actions. The allegations set forth in each case, including the class action, are the same in regard to all material facts except for differences relating to the ages and years of service of the individual employees and the amount of interest, if any, which each plaintiff is alleged to have in the pension fund.

The parties have orally informed the Court that a suit similar to the instant action was brought by the same plaintiffs herein against the same defendants herein in a Maryland state trial court. The jurisdiction of state and federal courts over suits for violation of collective bargaining contracts within the ambit of section 301 is concurrent. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Local 174 v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). All of the parties have informed this Court that they do not intend to proceed in the state court action if this proceeding is heard and finally determined on the merits. Under these circumstances, it appears most unlikely that there will be any conflict or duplication resulting from the existence of concurrent jurisdiction and of two substantially similar suits.

3. On July 15, 1965, DCA and the Union entered into a three-year agreement which is sometimes referred to in the relevant agreements as the Wage Agreement. Article XV thereof provides for contributions by DCA to a Pension Fund to be administered in accordance with the Pension Agreement dated July 15, 1953, as amended. Also on July 15, 1953 DCA, the Union and the Trustee entered into a Trust Agreement. Article VI, Section 7 of the Pension Agreement and Article XII of the Trust Agreement provide for joint construction of the basic Wage Agreement, the Pension Agreement and the Trust Agreement. Article IX of the Wage Agreement and Article VII of the Pension Agreement establish grievance and arbitration procedures.

Plaintiffs have not alleged any breach of trust by the Trustee, and state that they have only named the Trustee as a defendant because it is the custodian of the fund and so that this Court's order, if any, may direct the Trustee regarding the disposition of all or part of the fund. Joinder of the Trustee, while perhaps not an indispensable condition to the maintenance of this action upon the facts of this case (a point as to which the Court makes no ruling), would certainly appear to be appropriate. See Warshaw v. Local No. 415, 325 F.2d 143, 145 (5th Cir. 1963).

4. The pleadings do not disclose the extent, if any, of the exhaustion of the grievance and arbitration procedures under the agreements between DCA and the Union. See note 3 supra. Questions concerning such exhaustion or the lack of it will be considered and determined by the Court

The pension fund was established pursuant to an agreement between DCA and the Union (represented by its Local) on July 15, 1953, following a protracted strike and collective bargaining for higher wages. The pension fund covered the employees of two of DCA's divisions, namely, its Cereal Division and its Mechanical Division, both of which are located at DCA's plant at Ellicott City, Maryland. The provisions relating to the fund were amended by DCA and the Union from time to time during the years since 1953 as a result of collective bargaining. Plaintiffs allege that the present aggregate market value of the fund is in excess of $475,000. On July 29, 1966, plaintiffs and all of the employees of the Cereal Division were advised that the Cereal Division would be closed during the first half of 1967 and that the employment of all of the plaintiffs would be terminated. This shutdown is now underway and is expected to be completed by mid-summer of this year. DCA's Mechanical Division at Ellicott City is presently continuing operations and plaintiffs state that that Division is not at this time affected by the shutdown of the Cereal Division. On October 31, 1966, DCA and the Union amended the pension fund provisions. The substance of this amendment is alleged to be that employees of the Cereal Division who had completed a certain number of years'

service and who had at that time attained a certain age would be eligible for pension benefits upon attaining the age of 65 years, but that all other employees of the Cereal Division, including all of the plaintiffs herein, would lose all rights in and to the pension fund.[5] Plaintiffs, among other contentions, claim that the amendment of October 31, 1966 frustrates the reasons and purposes which underlay the Union's original negotiation seeking to establish the pension fund; that the October 31, 1966 amendment discriminates against plaintiffs in favor of employees in the Mechanical Division as well as in favor of some older Cereal Division employees and arbitrarily, illegally and unfairly deprives plaintiffs of their rights in and to the fund; that DCA's contributions to the fund constitute part of plaintiffs' compensation from the time that the pension fund was set up and that the amendment deprives plaintiffs of that compensation. Plaintiffs pray this Court to declare the amendment of October 31, 1966 null and void, to declare plaintiffs' rights in and to the fund, and to grant other appropriate or supplementary equitable relief.

 Plaintiffs have grounded their actions on section 301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185(a)[6] and the federal Declaratory Judgment Act, 28 U.S.C.A. § 2201.[7] Both of those statutes raise ju-

at the threshold of this case, before exercise by this Court of its jurisdiction under section 301. See Vaca v. Sipes, 386 U.S. 171, 184–185, 87 S.Ct. 903, 914–916, 17 L.Ed.2d 842 (1967); see also Foy v. Norfolk & Western Ry. Co., 4th Cir., No. 11,051, April 21, 1967.

5. Plaintiffs allege that by virtue of the amendment to the pension fund agreement the only employees of the Cereal Division who will be eligible for pension benefits will be those who have completed at least 15 years of service and have attained at least 60 years of age; or who have completed at least 20 years of service and have attained at least 55 years of age; or who have completed 25 years of service and have attained at least 50 years of age. The complaint alleges that none of the plaintiffs meet those conditions, although plaintiffs allege that

they all have substantial consecutive service with the Cereal Division, "in many cases" exceeding 15 and even 20 years, and that most were employed when the pension fund was established in 1953.

6. "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

7. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

risdictional questions. Section 301 is both jurisdictional and substantive. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It creates an independent basis of jurisdiction by investing federal courts with the power to hear and determine "without respect to the amount in controversy or without regard to the citizenship of the parties" cases which fall within its ambit. In order to determine, therefore, whether an action may be premised upon section 301 and entertained in a federal court without regard to diversity or the amount in controversy, inquiry must be directed to the question of whether or not the cause of action stated in the complaint lies within "the area covered by the statute." See Local 174, Teamsters, Chauffeurs, Warehousemen etc. v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). The Declaratory Judgment Act, on the other hand, does not create any independent ground for jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). However, once an independent basis of jurisdiction, such as diversity or federal cause of action, has been established in a suit for declaratory relief, the further jurisdictional question then arises as to whether or not the suit presents "a case of actual controversy" within the meaning of the Declaratory Judgment Act. If no actual controversy is presented, the Court must then dismiss for want of jurisdiction since the judicial power of the United States depends on the existence of a case or controversy. U.S.Const. art. III, § 2. "For a matter to come within the jurisdiction of the court under the Declaratory Judgment Act, * * * it must involve an actual controversy between the parties before the court 'admitting of specific relief through a decree of a conclusive character.'" Smith v. Blackwell, 115 F. 2d 186, 188 (4th Cir. 1940). Where such

a controversy is not found to exist the action must be dismissed for want of jurisdiction even though, for example, diversity of citizenship (or as here, jurisdiction under section 301) exists between the parties.

Upon consideration of plaintiffs' complaint and the allegations therein, this Court holds that the instant complaint states a cause of action which is cognizable under both of the aforementioned statutes.

■ The question of whether or not section 301 permits an action to be brought by employees for an alleged breach by both union and employer of rights of such employees under a pension fund established by collective bargaining and resulting agreements between the employer of such employees and the union representing them does not appear previously to have arisen. It is, however, completely clear that individual employees may maintain suit under section 301 for breach of collective bargaining contracts between a union and an employer. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). In addition, it appears perfectly clear that suits may be properly instituted under section 301 for violations of any contract between the employer and the union and that the word "contract" as it appears in section 301(a) encompasses the provisions of a pension fund established in accordance with and as required by the collective bargaining agreement. See Local 33 Intern. Hod Carriers Bldg. etc. v. Mason Tenders, 291 F.2d 496 (2d Cir. 1961); Burlesque Artists Ass'n v. American Guild, 187 F.Supp. 393 (S.D.N.Y.1958). Furthermore, individual employees may bring suit under section 301 against the union which represents them where the action is based upon an alleged violation by the union of its duty of fair representation. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967); Humphrey v. Moore,

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). The fact that the alleged contract violation herein complained of may also constitute an unfair labor practice charge within the jurisdiction of the National Labor Relations Board does not adversely affect the jurisdiction of this Court under section 301. Vaca v. Sipes, supra, 386 U.S. at 183–87, 87 S.Ct. at 913–15; Humphrey v. Moore, supra, 375 U.S. at 344, 84 S.Ct. 363, 11 L.Ed.2d 370; Smith v. Evening News Ass'n, supra, 371 U.S. at 197–198, 83 S.Ct. 267, 9 L.Ed.2d 246.

█ The case which appears most clearly in point with regard to the issues herein relevant to section 301 is Humphrey v. Moore, supra. In that case two companies, E & L Transport Company and Dealers Transport Company, were engaged in the business of transporting automobiles from a Ford Motor Company assembly plant. Ford informed the two companies that there was room for only one. The companies made an arrangement the effect of which was for E & L to withdraw. The employees of both E & L and Dealers were represented by the same union. The union informed the E & L employees that their situation was precarious. When layoffs began at E & L three E & L employees filed grievances claiming that the seniority lists of E & L and Dealers should be "sandwiched" and that E & L employees should be taken on by Dealers with the seniority they had had at E & L. These grievances were submitted to the local joint committee, which recommended to the Joint Conference Committee that the seniority lists be dovetailed and that Committee adopted the recommendation. Since E & L was an older company most of its employees had more seniority than the Dealers employees; consequently the Committee's decision entailed layoff of a large number of Dealers employees to provide openings for E & L employees. Moore, on behalf of himself and other Dealers employees, brought a class action in a Kentucky state court for an injunction against both the union and the company to prevent the Committee's decision from being carried out. The Kentucky Court of Appeals reversed the trial court's refusal to grant an injunction and itself granted a permanent injunction. Certiorari was granted. In determining the question of whether or not the case was one which arose under section 301, the Supreme Court of the United States emphasized that the union was charged in plaintiffs' complaint with fraud and deception. The Court stated that plaintiffs' allegations were sufficient to charge a breach of the union's duty of fair representation and held that a union is subject to suit under section 301 by its members when a breach of the union's duty of fair representation and a violation of the contract is charged. The Supreme Court has subsequently made it clear that a breach of the duty of fair representation which would entitle an employee to maintain suit against a union under section 301 is not limited to cases where the union is alleged to have acted fraudulently. Such a breach occurs whenever a union acts arbitrarily, discriminatorily or in bad faith with regard to a member of the collective bargaining unit. Vaca v. Sipes, supra, 386 U.S. at 190, 193, 87 S.Ct. at 916, 918, 17 L.Ed. 2d 842. In Paragraph 19 of Case 1 in plaintiffs' complaint and in Paragraph 18 of Case 2 (the latter of which is incorporated by reference in Cases 3 through 51) it is alleged that plaintiffs have been discriminated against and arbitrarily, illegally and unfairly deprived of their rights. It would appear that these allegations charge a breach of the Union's duty of fair representation and also allege that DCA has wrongfully deprived plaintiffs of valuable rights to which they are entitled under the pension fund.

█ The views expressed by the Supreme Court in *Humphrey* clearly establish that the action herein involves rights and obligations which may be litigated by the plaintiff-employees under the aegis of section 301. The shutdown in this case of one division (the Cereal Division) and continuance of another division (the Mechanical Division)

and the fact that the employees in both divisions are represented by the same union presents a situation which is analogous in many ways to the situation in *Humphrey*. Under such circumstances the employer and the Union may well have been prone to act, and indeed might have acted, unfairly towards the employees being laid off and to have discriminatorily favored the employees whose employment continues. The need to permit employees who are being laid off and who level such charges at both the Union and DCA to proceed under section 301 is self-evident. In this connection, it is important to note that the Supreme Court has made it clear that section 301 "is not to be given a narrow reading." Smith v. Evening News Ass'n, supra, 371 U.S. at 199, 83 S.Ct. at 270, 9 L.Ed.2d 246. This Court feels that the cause of action set forth in plaintiffs' complaint is clearly within the ambit of that section and holds that it has jurisdiction over the subject matter herein "without respect to the amount in controversy or without regard to the citizenship of the parties."

No doubt exists that declaratory relief may be sought under section 301 if the basic requirements of the Declaratory Judgment Act itself are met. The Supreme Court indicated that such is the case in quoting from an exchange between Congressman Barden and Congressman Hartley on the floor of the House of Representatives during consideration of what is presently section 301. Textile Workers Union v. Lincoln Mills, supra, 353 U.S. at 455–456, 77 S.Ct. 912, 1 L.Ed.2d 972. Since that time Chief Judge Thomsen of this Court has held that "in an appropriate case, that section [section 301] confers jurisdiction on a district court to render a declaratory judgment as to rights created or existing under a collective bargaining agreement." Local No. 28 v. Maryland Chapter, National Electrical Contractors, 194 F.Supp. 491, 493 (D.Md.1961) (action for declaratory judgment by union to determine whether collective bargaining contract had been effectually terminated); Chesapeake & Potomac Tel. Co. v. Communications Workers, 239 F.Supp. 334 (D.Md.1965) (action for declaratory judgment by employer to determine whether agreement between it and union required it to submit to arbitration grievances challenging propriety of disciplinary action taken by employer with respect to two employees).

While no case appears to have faced the issue of whether a declaratory judgment may be had with regard to construction of a collective bargaining contract in connection with a pension plan thereunder, it has been held in Local No. 2 v. Paramount Plastering, Inc., 310 F. 2d 179 (9th Cir. 1962), that questions concerning whether or not the provisions of a jointly administered trust were or were not violative of federal statutory provisions presented a controversy within the meaning of 28 U.S.C.A. § 2201 and that declaratory relief could be granted. Application of 28 U.S.C.A. § 2201 to the facts of this case would seem to call for a similar conclusion, i. e., that the instant case presents an actual "controversy" within the meaning of 28 U.S.C.A. § 2201 and not a hypothetical "controversy."

The Union and DCA have already entered into an agreement under which plaintiffs allege that they are deprived of rights in the pension fund; the Cereal Division is presently in the process of being shut down; and DCA has admitted in its answer that the shutdown will be completed by mid-summer. The Court holds that there is present herein a case of actual controversy within the meaning of the Declaratory Judgment Act.

For the reasons stated, defendants' motions to dismiss are denied.