Joseph F. KNOLL, Mark J. Kute and Arthur C. Mead, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

PHOENIX STEEL CORPORATION and First Pennsylvania Banking and Trust Company and United Steelworkers of America et al., Defendants.

Civ. A. No. 38764.

United States District Court,
E. D. Pennsylvania.

April 13, 1971.

James J. McCabe, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiffs.

Raymond K. Denworth, Jr., Drinker, Biddle & Reath, Philadelphia, Pa., for Phoenix Steel, First Pennsylvania Banking and Trust Co. and Phoenix Steel Retirement Bd.

Galfand, Berger, Senesky & Lurie, Philadelphia, Pa., for United Steel Workers of America.

OPINION AND ORDER

FULLAM, District Judge.

On December 31, 1960, the Plate Division plant of the Phoenix Steel Corporation at Harrisburg, Pennsylvania, ceased operations. Many men lost their jobs and have had difficulty in finding employment, at least at wages comparable to those paid by Phoenix Steel. Pursuant to an agreement originally entered into in 1950 between Phoenix Steel and the United Steelworkers of America, the collective bargaining agent for the Phoenix Steel employees, a pension plan was established. The plan calls for contributions by Phoenix Steel to a fund which is held by the First Pennsylvania Bank as trustee. The plan is administered by the Retirement Board, consisting of three members designated by the company.

Section 17 of the basic plan provides for disposition on termination of the plan. Essentially, it provides that those receiving pensions, and those at the retirement age (65) and not yet receiving benefits, are entitled to priority in payment of retirement benefits. Those with 15 or more years of continuous service, but not age 65 by the time of termination, are credited with all the further balance remaining in the fund "in such amount, upon such terms and under such conditions as the Board shall determine to be equitable." The allocations so provided are to be accomplished through either the continuance of the trust or the purchase of annuity contracts; however, the plan also states that: "[T]he Board upon finding that it is not practicable or desirable under the circumstances to do either of the foregoing with respect to any person or all of the persons included in the groups listed * * *, may provide for allocation of a part or all of the Fund other than through the above methods * * *."

When the Plate Division plant closed, the plan was deemed terminated. The Retirement Board decided to continue the trust. The Company and the United

Steelworkers entered into an agreement on March 5, 1961 to supplement section 17 of the basic agreement. This agreement provides that the Company will make no further contributions to the fund and that no portion of the funds will be returnable to the Company. Also, provision for pension benefits is made for those former employees who had at least 15 years service at the time they reached age 60. The fund is segregated from other funds applicable to employees at other plants, and provides only for those formerly employed at the Plate Division plant. As of December 31, 1960, the book value of the fund amounted to $2,859,641.63. Pensions of $2.30 per month for each year of service were authorized for the former employees who fell within the two classes entitled to first priority. Pensions of $1.53 per month per year of service were initially allocated to those former employees who had at least 15 years of service and who reached the age requirements after termination. This amount had increased to $2.00 per month by 1968.

This suit was brought by several of the former employees of Phoenix Steel who lost their jobs when the Plate Division plant closed. They purport to represent the class of all such former employees who were not receiving retirement benefits on December 31, 1960. They have named the Company and the Retirement Board as defendants and claim that section 17 of the pension plan agreement was violated in that the Board should not have continued the trust, but should have paid out the fund in lump sums to the former employees, based on their respective shares in the fund. They request equitable relief mandating that form of termination of the trust. Jurisdiction is based on the Labor Management Relations Act, § 301(a) (29 U.S.C. § 185(a)). Plaintiffs also seek the same relief on a *quantum meruit* theory, as to which jurisdiction is asserted under 28 U.S.C. § 1332 (diversity of citizenship) and the theory of pendent jurisdiction.

A claim is asserted against the United Steelworkers of America for the sums that would have been paid out of the fund had the trust principal been paid out as lump sums; the bases for this claim are promissory estoppel and, apparently, breach of the duty of fair representation. Jurisdiction is asserted under the Labor Management Relations Act § 301(a) and pendent jurisdiction.

All defendants have moved for summary judgment. Plaintiffs have moved for a determination of the class.

### *The class action*

■ With respect to the crucial liability issues involved in this case, it is clear that all requirements for a class action have been met. The class is numerous, the issues are common, and, in view of the disposition of the fundamental issues, such differences as might give rise to questions about adequacy of representation as among possible subclasses need not be faced. The class-action motion will be granted.

### *Claim against the Company and Retirement Board*

■ The initial claim is based on the theory that the Company and the Retirement Board breached the contract by which the pension plan was established. Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Under this statute, this Court has jurisdiction over the breach of contract claim. Smith v. DCA Food Industries, 269 F.Supp. 863 (D.Md.1967).

■ When a pension plan terminates, the rights of the employees to share in

the fund vest. Hauser v. Farwell, Ozmun, Kirk & Co., 299 F.Supp. 387 (D. Minn.1969). Frequently, when plants close, employees are discharged but the pension plan continues in effect for the remaining employees. The discharged employees, being unable to meet the eligibility criteria (years of service, continuous employment until retirement), receive no benefits. Courts have uniformly held that such plant closings do not terminate the pension plan and do not cause a vesting of rights. *See* Green v. Copco Steel and Engineering Co., 22 Mich.App. 16, 176 N.W.2d 690 (1970); Gorr v. Consolidated Foods Corp., 253 Minn. 375, 91 N.W.2d 772 (1958); Schneider v. McKesson & Robbins, Inc., 254 F.2d 827 (2nd Cir. 1958); George v. Haber, 343 Mich. 218, 72 N.W.2d 121 (1955). Such employees have urged that, despite the actual ending of their employment, they remain employees for purposes of qualifying under the terms of the pension plan. This approach has also been unsuccessful. Local Lodge 2040, International Association of Machinists v. Servel, Inc., 268 F.2d 692 (7th Cir.), cert. den. 361 U.S. 884, 80 S. Ct. 155, 4 L.Ed.2d 120 (1959). *See generally* M. Bernstein Employee Pension Rights When Plants Shut Down; Problems and Some Proposals, 76 Harv.L. Rev. 952 (1963).

Here, there can be no doubt that the plan has terminated. However, it is also clear that the employees with 15 years of employment are receiving, or have the right to receive, pensions when they reach age 60 or 65. It should be noted that plaintiffs do not challenge the termination provisions of the agreement (section 17), which exclude employees with less than 15 years of service at the time of termination. Therefore, under any of the theories asserted, these former employees are barred from recovery by the contract itself. The case is not like Hauser v. Farwell, Ozmun, Kirk & Co., *supra*, where, after contributions ceased, the basic plan was amended so as to prefer some employees over others. The court held that the amendment had

no effect because the rights of the employees in the pension fund had already vested. The priorities on termination here were established when the basic agreement was entered into.

■ The foregoing discussion sharpens the issue presented here. Plaintiffs are not complaining that they have been deprived of benefits, but object to the form of the benefits. They contend that the Retirement Board abused the discretion afforded it by section 17, and thereby breached the termination provisions of the contract. The abuse of discretion allegedly occurred because the Board, in light of the hardship suffered by the plaintiffs due to their inability to find comparable work should have found continuation of the trust to be inequitable and not practicable or desirable. They contend that an issue of material fact exists in that the extent of this hardship must be determined at trial.

More specifically, the present issue is not whether the Board should have considered the hardships of the plaintiffs. It apparently did so, to some extent, in lowering the qualifying age to 60. The issue is whether hardship or any other circumstance, other than the lack of sufficient funds to provide meaningful pensions, is a ground for discontinuing the pension trust for those who desire lump-sum payments. The affidavits of Robert G. Gersteneker, Chairman of the Retirement Board, and Hugh Carcella, District Director of District 7, United Steelworkers of America, make clear that the Board and the Union felt that under the contract the pension trust had to be continued unless the fund was insufficient, and, in their judgment, the fund was sufficient. The Board never exercised any discretion on the issue of providing lump-sum payments on the ground of hardship; it never considered this alternative. If plaintiffs' contention is correct, then the proper remedy would be either to refer the matter back to the Board for consideration in light of this interpretation of the contract, or for this Court to hear the evidence and

exercise the function of the Board. It is the latter remedy that plaintiffs desire.

■ However, neither of these courses of action is appropriate if the Board's interpretation of the contract was correct. And the Board should be allowed some scope of discretion in interpreting the contract. Roark v. Lewis, 130 U.S. App.D.C. 360, 401 F.2d 425 (1968).

The whole agreement here is, like all pension plans, designed to provide financial security for employees at a time when they are no longer able to work, due to age. Arguably, the money placed in the pension fund should be used to aid employees whenever they are no longer able to work because of circumstances beyond their control, and should be used in the form most helpful to the particular individual. But, when a particular kind of benefit is provided for in a valid agreement, it is not for a court to interpret the agreement to provide another, though similar, benefit. It is quite obvious from a reading of the entire agreement here involved that a pension program was the only benefit intended, and, under section 17, it was intended to continue when contributions terminated, except if pensions became impracticable because they would not fulfill their purpose as *pensions*. Something more specific would have to appear in the sections of the agreement relating to termination, to counteract the plain import of the entire agreement, before plaintiffs' position would be tenable. Summary judgment in favor of the Company and the Retirement Board members must be granted.

■ Plaintiffs assert an alternate claim based on a *quantum meruit* theory. Though there is some dispute as to the citizenship of Phoenix Steel Corporation (Pennsylvania or Delaware) for the purpose of determining federal diversity jurisdiction, this claim clearly arises out of the same transactions and occurrences as the breach of contract claim and is pendent to it. The federal claim, though found to be without merit, is sufficient to support consideration of the state claim. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ Plaintiffs rely on Lucas v. Seagrave Corporation, 277 F.Supp. 338 (D. Minn.1967). There employees were let go when their company merged with defendant. Defendant sought to deprive these employees of all pension rights because they could not meet the eligibility requirements (continued employment until retirement). The court held that the employees could assert a right to share in the fund on the ground that the employees had worked partially for the company's contributions to the fund (which were considered the same as wages), and that the company would benefit by using the contributions "earned" by these employees because future contributions to cover the employees who remained would be much less than before. However, nothing in the case indicated that the employees could assert their right to share in the fund in any one form as opposed to another, nor did the case hold that an unchallenged agreement as to distribution, made long before termination, could be upset under this theory. Moreover, the element of enrichment to the company is missing here. This plan is terminated. The company will not benefit by reduced contributions because all contributions have ended. Nor can the company receive any part of the fund. The defendants are entitled to summary judgment as to this claim as well.

### Claim against the United Steelworkers of America

The contentions against the Union basically amount to a claim that the Union breached its duty of fair representation. Specifically, the complaint alleges that the Union participated in the negotiations which resulted in the continuation of the trust and the supplementary agreement thereto when its representation of the employees had terminated (because they were no longer employed). This contention has apparently been

abandoned (and well it should, since it has no merit) and replaced with the contention that the Union did not adequately protect the interests of its members in various ways in connection with the negotiations; however, this claim is not specifically pleaded. Primarily, plaintiffs argue that the Union did not properly consider their needs when it failed to advocate the lump-sum payments they now desire. Further, they allege that the Union did not keep them adequately informed of the negotiations on termination of the plan so that they could express their desires to the Board, and, in fact, misinformed them by leading them to believe that lump-sum payments were being contemplated. Also, they now contend that the Union, in 1967, blocked a settlement of this case which would have resulted in the relief plaintiffs desire.

■ Jurisdiction is asserted under the Labor Management Relations Act § 301(a). At the outset, it is clear that individual employees may bring suit under this section for breach of a contract between employer and Union. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). More questionable, as a matter of logic, is whether an employee can sue his collective bargaining representative in the circumstances presented here. This issue seems answered in the affirmative by Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). There two companies were consolidated and the same union represented employees at both. Some employees had to be released, and the problem arose whether the seniority lists of the two companies should be dovetailed. The union recommended that this occur, and the employer agreed. An employee who was discharged as a result sued the union for breach of its duty of fair representation. The Supreme Court held that the complaint stated a claim against the Union under § 301(a). The Court reasoned that if the union did breach its duty, the decision to discharge certain employees

was void, and the discharge of plaintiff was a violation of the collective bargaining agreement. More on point is Smith v. DCA Food Industries, Inc., *supra*, where the complaint brought under § 301(a) charged that the union and company amended a pension fund agreement after one division of the company closed, resulting in unfair discrimination against a class of employees. The Court held, in part, that "* * * individual employees may bring suit under section 301 against the union which represents them where the action is based upon an alleged violation by the union of its duty of fair representation. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964)." 269 F.Supp. at 868. On the basis of these cases, I conclude that this Court has jurisdiction to consider the claims against the Union based on a theory of improper representation.

■ However, the disposition of the claim against the Company governs the result on this issue. To breach the duty of fair representation, the conduct of the Union must be arbitrary, discriminatory or in bad faith. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953) quoted in Humphrey v. Moore, *supra*. Here the Union's conduct in negotiating the terms of the supplemental agreement and other matters with respect to termination of the pension plan was based on its and the Board's interpretation of the contract which, as stated above, is a reasonable one. Summary judgment in favor of the United Steelworkers of America must be granted.

■ Plaintiffs direct another theory against the Union. They contend that it

is bound by promissory estoppel to pay the lump sums that the men could have obtained from the pension fund, because the local union administrator promised the men that they would get such benefits from the Board. The Union flatly denies that any such statement was made. This claim is based on state law, but it arises out of some of the same factual circumstances as the § 301(a) fair representation claim, and is pendent to it. Again, the basic federal claim, though found meritless, supports consideration of the state claim.

Pennsylvania subscribes to § 90 of the Restatement of Contracts. Fedun v. Mike's Cafe, Inc., 204 Pa.Super. 356, 204 A.2d 776 (1964). It states:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise."

Since factual issues exist as to whether any promise was made at all or whether plaintiffs were induced to action or forbearance by it, the issue now is whether the alleged promise is one which, as a matter of law, could be relied upon.

■ The statement allegedly made by the Union official was, according to the affidavits of some of the employees, that the employees "would receive lump sum payouts from the fund and that he would see to it that the Union secured such payouts * * *." The Union itself had no power to determine the use of the pension trust fund. This authority rested solely with the Retirement Board (Section 21). The Union could, of course, negotiate with the Company and Board concerning the fund. The statement made is nothing but a statement of the Union's negotiating position. To rely on such a statement as a promise that the Union would actually produce the benefits is unreasonable, even for an employee not familiar with the precise terms of the agreement. I conclude that there is no genuine issue of material fact, and that the motion for summary judgment must be granted.