Regis **ROTHLEIN** et al., Plaintiffs,

v.

**ARMOUR AND COMPANY,** Defendant.

Civ. A. No. 66–362.

United States District Court,
W. D. Pennsylvania.

June 28, 1974.

McArdle, Henderson, Caroselli, Laffey
& Beachler, Pittsburgh, Pa., for plain-
tiffs.

Reed, Smith, Shaw & McClay, Pitts-
burgh, Pa., for defendant.

OPINION

WEBER, District Judge.

This is an action filed under the La-
bor Management Relations Act, 29 U.S.
C. § 185(a) for violation of contracts be-
tween an employer and a labor organiza-
tion representing employees. The plain-
tiffs are individuals who are representa-
tive of a class of plaintiffs who are or
were employed by the defendant at vari-
ous times between 1926 and 1960.
There are approximately eighty-two in-
dividuals in the class. The plaintiffs
were and are members of the General
Teamsters Union, Local 249. In 1952
the defendant Armour and Company cre-
ated a pension plan as a result of a

collective bargaining agreement between it and the United Packing House Workers of America (CIO). A separate collective bargaining agreement between Teamsters Local 249 and the defendant Armour and Company made the provisions of the 1952 Armour Pension Plan applicable to the plaintiffs as members of Teamsters Local 249. The 1952 Armour Pension Plan was known as "Plan A" and it was eventually replaced by three subsequent plans known as B, C and D, which became effective on January 1, 1962. Each of these plans was applicable to members of Teamsters Local 249 as a result of collective bargaining agreements between Armour and the Teamsters. All of these Armour Pension Plans were employer financed and non-contributory and were qualified under I.R.S. Regulations.

During the collective bargaining negotiations between Teamsters Local 249 and Armour and Company in 1964 it was agreed that the members of Teamsters Local 249 be removed from the Armour Pension Plan and transferred into the Teamsters Pension Fund. The collective bargaining agreement executed between the Teamsters and Armour on October 1, 1964 recited in Art. XVII that Armour agreed to contribute to the Teamsters Pension Plan a certain amount per week for each regular employee of the company. The agreement further recites that the Company policy of compulsory retirement for employees reaching sixty-five shall continue in effect. An exception was made in Art. XVII for certain employees in the Teamsters Local 249 unit who would not be eligible for coverage under the Teamsters Plan and it was provided that these employees would continue to be covered by the Armour Plan. Thereafter, Armour and Company made contributions for its employees in the Teamsters Local 249 unit to the Teamsters Pension Plan, and made no further contributions for these employees to the Armour Pension Plan with the exception of those employees who were specially noted in the October 1, 1964 agreement.

The plaintiffs have brought this action on behalf of members of their class claiming that the October 1, 1964 agreement does not terminate their rights to participate in the Armour Pension Plan. The plaintiffs' claim presents several alternatives. Plaintiffs claim that as a matter of law the Teamsters Union representatives who negotiated the October 1, 1964 collective bargaining agreement had no right to bargain away the vested rights of its members in the Armour Pension Plan. As a corollary to that argument plaintiffs assert that there was never any agreement in the 1964 negotiations between the Teamsters Local 249 and Armour and Company that the employees of the Teamsters Unit who were transferred into the Teamsters Pension Plan would have no continuing interest in the Armour Pension Plan.

A second claim of plaintiffs is that some twenty of the employees of the Teamsters Local 249 Unit had twenty years of service and were fifty-five years of age at the time the Armour Teamsters employees were transferred into the Teamsters Pension Plan and therefore had vested rights in the Armour Pension Plan.

A third contention of the plaintiffs is that the October 1, 1964 agreement resulted in a partial termination of the Armour Pension Plan within the meaning of Art. IX, Section 1, of the Pension Plan resulting in the vesting of certain benefits under the provision of that Plan to the members of the Plan which was thus terminated.

A fourth contention of the plaintiffs is that the denial of any benefits to them from Armour Pension Plan will result in the unjust enrichment of the defendant.

The defendant has moved for summary judgment on all issues on the basis that there is no contractual or legal basis for any of the plaintiffs' claims in this case. The defendant argues that there are no disputed issues of fact, that the facts are contained in the written documents of record in this case consisting of collective bargaining agreements

and pension plans, and defendant further argues that parol evidence cannot be admitted to alter or vary the conditions set forth in these written instruments, nor can an affidavit which solely sets forth legal conclusions from facts established in the record be considered on a motion for summary judgment.

■ The first issue of fact which we approach is whether or not under the express terms of the Armour Pension Plan there was any vesting in any of the plaintiffs or members of the class they represent. From our examination of the Armour Pension Plan we have determined that there is no vesting of the right to receive a pension in any employee of Armour before he reaches the mandatory retirement age of sixty-five, except for one condition. This condition prescribes that where an employee shall (1) have attained age fifty-five years, (2) complete twenty or more years of service, and (3) have his service terminated under conditions which would entitle him to a Separation Allowance in accordance with Art. XIX of the Master Agreement which refers to employees who are permanently dropped from service because of a reduction in force arising out of the closing of a unit of the business, or as a result of technological changes, and who is not expected to be re-employed after two years lay off, shall acquire a vested right in the plan. Therefore, unless this condition is satisfied, and it has not been shown to have been satisfied as to any plaintiff or member of his class, there are no vested rights in the Pension Plan until the actual retirement of the employee.

■ Having found that there were no vested rights in the Armour Pension Plan possessed by any of the plaintiffs or members of their class as of October 1, 1964, the date of the new collective bargaining agreement with the Teamsters Union the allegation of the plaintiffs that the Union bargained away the vested rights of its members must fall. The decision of Hauser v. Farwell, Ozmun, Kirk & Co., 299 F.Supp. 387 [D.

Minn.1969] is, therefore, not authority for the proposition which plaintiffs assert. In that case the court said:

"[A] Union may bargain as to prospective matters such as seniority rights, future conditions of employment, etc., it cannot bargain away the accrued or vested rights of its members." 299 F.Supp. at 393.

The facts shown in the *Hauser* case concern an employer who ceased doing business and an agreement between the employer and the union subsequent to the cessation of business as to the distribution of a surplus in the pension fund. Because of the minimal benefits of certain of the beneficiaries under the plan the Union and the Company agreed to a distribution of the surplus in a manner other than that provided in the pension agreement. However, on the complaint of certain of the members of the Union who were thus eliminated, the court held that the Union and Employer had no right to change the vested benefits of any employee on dissolution without the express consent or authority of the particular individual involved.

■ With respect to plaintiffs' contention that at the time of the transfer from the Armour Pension Plan to the Teamsters Pension Plan at least twenty members were fifty-five years of age or older and had completed twenty years or more of service, and therefore had vested rights we find that the condition of the separation from employment with Armour as required by the provisions of the Armour Pension Plan had not been met in any of these individuals. It appears from the record that all continued their employment with Armour with their pensions being funded through Armour's contribution to the Teamsters Pension Plan. Thus, there could be no vesting as to these alleged twenty employees.

The plaintiffs have asserted that in the negotiations leading to the collective bargaining agreement of October 1, 1964 there was no intention that the rights of the members of the Teamsters Unit in

the Armour Pension Plan should be waived. Nevertheless, the agreement between the parties is set forth in clear and unambiguous language in Art. XVII of the October 1964 collective bargaining agreement. This provides that Armour and Company agreed to contribute to the Teamsters Pension Plan a stated amount per week for each regular employee. It continues the former compulsory retirement at age sixty-five policy of the company. Finally, and critically, it does make specific exception for certain employees of the Teamsters Unit who would not qualify under the Teamsters Plan to be continued under the Armour Plan.

■ We must exclude parol evidence of the negotiations of the parties when they have embodied their agreement in a written instrument, which is clear and unambiguous. This has particular application to collective bargaining agreements. The parol evidence rule bars the admission of testimony as to bargaining history leading up to the execution of a collective bargaining agreement. Local 783, Allied Industrial Workers v. General Electric Co., 471 F.2d 751 [6th Cir. 1973]. Also in N. L. R. B. v. Gulf Atlantic Warehouse Co., 291 F.2d 475 [5th Cir. 1961], the court said:

"We think that ordinarily the language of the contract as finally agreed upon must be construed by the courts in accordance with ordinary rules of construction without reference to the give and take of the bargaining sessions which produced the final terminology. Otherwise we would abandon completely the parol evidence rule when dealing with this type of contract." (p. 477)

See also Anson v. Hiram Walker & Sons, 222 F.2d 100, 103 [7th Cir. 1955], and Fraser v. Magic Chef-Food Giant Markets, Inc., 324 F.2d 853 [6th Cir. 1963].

■ Furthermore, we cannot accept the proffered evidence of the intention of the parties in face of the clear provisions of the contract. While plaintiff argues that it was not the intention of

the parties to terminate the rights of the Teamster employees in the Armour Plan, it is noted that the contract specifically provides for those employees who were not to be so terminated. Article XVII, Section 17(c), recites:

"It is recognized that certain employees of the driver unit on terminal sick leave who have already applied for pension cannot be covered by the Teamster Plan. These employees will continue to be covered by the Armour Plan (E) applicable to inside employees January 1st, 1965. Employees in question are: Frank LaDone and Albert Kryl."

An ancient maxim of contract construction *"expressio unius est exclusio alterius"* provides that the expression in a contract of things of a class implies the exclusion of all not expressed, even though all would have been implied had none been expressed. 17A C.J.S. Contracts § 312; 17 Am.Jur.2d Contracts § 255. Under this doctrine of contract interpretation the fact that two specific employees were named for continued participation in the Armour and Company Pension Plan negates any argument that the remainder of the Teamster Unit participants in the Armour Plan would continue to participate in that plan.

■ Furthermore, plaintiffs' argument would lead to a construction that certain of Armour and Company employees would be participating in two pension plans at the same time and that Armour would be forced to make continuing contributions to two pension plans for the same employees at the same time. A contract will not be interpreted in such a way as to lead to harsh or absurd results. Operative Bricklayers U. No. 64 v. Bricklayers' Local U. No. 1, 45 F.R.D. 429 [E.D.Pa.1968].

■ Plaintiffs have also argued that even if they do not meet any of the specific requirements for a vested benefit they are nevertheless entitled to a benefit or Armour will be unjustly enriched. However, such a contention would be contrary to the federal regulations gov-

erning such plans for income tax purposes by which a Pension Plan becomes a "qualified" plan to allow the employer to deduct the contributions to the plan for income tax purposes. It is not disputed that this is a "qualified" plan in this case and the plan itself provides that defendant has no right, title or interest to any contributions to the plan once they have been made and they may not revert back to the defendant in any event. Armour Pension Plan, Art. V, Sec. 3(a). All contributions are irrevocably made by defendant and remain in the Armour Plan for the sole purpose of providing benefits for eligible employees. We know of no authority that has allowed recovery upon such a theory. Lucas v. Seagrave, 277 F.Supp. 338 [D. Minn.1967] was a case where the employer's motion for summary judgment on such a claim was denied because questions of the employer's bad faith remained for trial before the finder of fact in that case. Therefore, we hold that the claim of unjust enrichment does not present a claim which involves any disputed issue of fact requiring a trial in this case.

■ Finally, the plaintiffs allege that the transfer of a large group of plaintiffs' employees represented by the Teamsters Unit here from the Armour and Company Plan to the Teamsters Pension Plan as a result of the collective bargaining agreement of October 1st, 1964 represents a partial termination of the Armour and Company plan with the resultant effects which are provided for in the Armour and Company plan.

Article IX, Sec. 1, of the Armour Pension Plan provides in part that:

"The Company reserves the right to amend, modify, suspend or terminate the Plan with respect to all or a portion of the Employees covered hereunder, by action of its Board of Directors."

Section 2(b) of Art. IX, provides in part:

"If the Company terminates the Plan in accordance with Section 1 of this Article with respect to only a portion of the Employees covered by the Plan, such as, but not limited to, the Employees within a specified bargaining unit under a Collective Bargaining Contract, the Trustee, with the advice of the Actuary, shall apportion to such Employees, a portion of the total realizable value of the Pension Fund."

The defendant argues that neither the Company nor its Board of Directors terminated the Plan with respect to Plaintiffs under Article IX. It is not disputed that the Armour and Company Pension Plan has continued in operation for other employees of the Defendant Company but by reason of the collective bargaining agreement of October 1, 1964 between the employer and the Teamsters Union the members of plaintiffs' unit would no longer participate in the Armour Plan, and would thereafter participate in the Teamsters Plan. The defendant Armour and Company has not ceased doing business and the plaintiffs have not been separated from employment with it. It is not in dispute that the Armour and Company Pension Plan is still in operation. Plaintiffs' argument is that a plan is terminated in part when large groups of employees lose their coverage under a given plan. However, the plain language of the pension plan describes the manner of termination in whole or in part. It recites that such action may be taken by its Board of Directors. The plaintiffs have presented no evidence here to support their claim that there has been a termination. Their evidence solely points to the fact that they are no longer covered under the Armour Plan by reason of the transfer of the whole bargaining unit into the Teamsters Plan. We cannot see how any issue of fact exists here. We are faced solely with a matter of the legal effect of the action taken.

"Frequently, when plants close, employees are discharged but the pension plan continues in effect for the remaining employees. The discharged employees, being unable to meet the eligibility criteria (years of service,

continuous employment until retirement), receive no benefits. [The] courts have uniformly held that such plant closings do not terminate the pension plan and do not cause a vesting of rights. *See* Green v. Copco Steel and Engineering Co., 22 Mich. App. 16, 176 N.W.2d 690 (1970); Gorr v. Consolidated Foods Corp., 253 Minn. 375, 91 N.W.2d 772 (1958); Schneider v. McKesson & Robbins, Inc., 254 F.2d 827 (2nd Cir. 1958); George v. Haber, 343 Mich. 218, 72 N.W.2d 121 (1955). Such employees have urged that, despite the actual ending of their employment, they remain employees for purposes of qualifying under the terms of the pension plan. This approach has also been unsuccessful. Local Lodge 2040, International Association of Machinists v. Servel, Inc., 268 F.2d 692 (7th Cir.), cert. den. 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959). *See generally* M. Bernstein Employee Pension Rights When Plants Shut Down; Problems and Some Proposals, 76 Harv.L.Rev. 952 (1963)." Knoll v. Phoenix Steel Corporation, 325 F. Supp. 666, (p. 669) [E.D.Pa.1971], aff'd 465 F.2d 1128 [3rd Cir. 1972].

Schneider v. McKesson & Robbins, Inc., 254 F.2d 827 [2nd Cir., 1958], affirmed the grant of summary judgment by the district court in the case of employees who were discharged by a lay off due to the closing of one of employer's plants. The court held that the interest of the participants under the plan in the trust fund is limited to their contingent rights to receive a pension at age sixty-five and their rights to share in the trust fund if the plan is terminated. The court held that it cannot realistically be said that the pension plan was terminated or "partially terminated" when the Newark division was discontinued.

■ The general conclusion which we draw from a review of the cases is that if none of the conditions specified in the plan for termination has occurred, and if the employees have not met the eligibility requirements for benefits as stated in the plan, the plan will not be deemed to be terminated and the employees will not receive any benefits solely because an event occurs which cancels their coverage under the plan. We find no genuine issue of material fact and find summary judgment appropriate in the circumstances here.

■ We find nothing in the Internal Revenue Code and the Treasury Regulations which controls the issue of termination. The Internal Revenue Code requirements solely are designed to provide for the "qualification" of the provisions of a plan so that it may be eligible for the appropriate tax benefits extended to such plans under the Internal Revenue Code. The Internal Revenue Code and the Regulations merely provide standards which shall be applied on the examination of plans proposed for qualification. The provisions have no bearing on individual employees' rights to benefits under the specific contractual provisions of a given "qualified" plan. Fiorelli v. Kelewer, 339 F.Supp. 796 [E.D.Pa.1972]; Lucas v. Seagrave, 277 F. Supp. 338 [D.Minn.1967].

In *Lucas*, the court stated:

"[I]t would appear that the only consequence herein of the 'partial termination' of a plan with the employer denying the accrued benefits would be a failure to qualify under the provisions so as to render improper an income tax deduction by the employer for its contributions. . . . Consequently, it appears that this allegation by plaintiffs is insufficient. We conclude that there is no genuine issue of fact raised on this question and summary judgment is a proper disposition of plaintiff's contention." (p. 342)

■ It has also been suggested that there is a material issue of fact as to whether Teamsters Local 249 waived the rights of the individual plaintiffs in the Armour Pension Plan in 1964 when it had no express authority to do so. We have previously treated the lack of au-

thority of a union to bargain away the vested rights of employees in a pension plan without specific authorization to do so by our reference to Hauser v. Farwell, Ozmun, Kirk & Co., 299 F.Supp. 387 [D.Minn.1969] but we believe that this is a slightly different argument. We do not take it that plaintiffs here urge that the Union has improperly waived vested rights, which we did not find to exist, but that it had no express authority to consent to a termination of the defendant's obligation to continue to contribute for its members to the Armour Pension Plan. We find, however, that Teamsters Local 249 was the recognized bargaining agent for the unit employed by defendant and it had full authority to bargain with respect to all matters concerning plaintiffs' participation in a pension plan. It did not bargain away any vested rights under the Armour plan. Pension plans and all aspects thereof have long been held to be mandatory subjects of collective bargaining. Inland Steel Co. v. N. L. R. B., 170 F.2d 247 [7th Cir. 1948].

An employer is required to bargain only with the designated exclusive bargaining representative of the employees of the bargaining unit. Therefore, since pension plans are a mandatory subject of collective bargaining, the plaintiffs cannot deny the express authority of Local 249 to negotiate with defendant concerning pensions. In *Hauser,* cit supra, the court said:

> "[A] Union may bargain as to prospective matters such as seniority rights, future conditions of employment, etc., it cannot bargain away the accrued or vested rights of its members." (p. 393)

There is no evidence of the bargaining away of any vested rights of the plaintiffs or members of their class.

It may be of interest to note that plaintiffs have alleged the fact that they and their class who were transferred from the Armour Pension Plan to the Teamsters Pension Plan in 1964 now find that their pension benefits in the Teamsters Plan are somewhat less than benefits of employees of similar seniority who were continuously covered by the Teamsters Plan. While this might be used as an argument to show that certain vested rights of the plaintiffs were surrendered by the Union at the time of the transfer, nevertheless we have found that the plaintiffs had no vested rights in the Armour Plan at that time but only an expectancy. However, the consideration for the change from the company plan to the industry wide plan maintained by the Union is readily apparent when we consider the drastic effects upon employees in a large number of cases where business firms have terminated operations and gone out of business prior to the date of vesting of the pension rights of many of their employees. It was very likely considered a benefit by many of the employees of the Teamsters bargaining unit in the defendant's plant when they were able in 1964 to transfer from a company's plan whose continued existence depended upon the continuance of the company's business to an industry wide plan which provided the benefits of portability so that an employee could continue to accumulate security in the same pension plan even though he changed employers as long as he remained in the same industry covered by the Teamsters Pension Plan. We do not consider this fact relevant for our consideration of the issues here, but we cannot control the impulse to make this observation in view of the argument advanced.

In conclusion we find no genuine issue of any material fact in the present case which precludes the grant of summary judgment. It is not the facts of this matter which are in dispute but the conclusions which are attempted to be drawn therefrom. These are matters of law to be determined by the court from the admitted facts and the documents contained in the record.