Ben Franklin COLEMAN, Plaintiff,

v.

The KROGER COMPANY et al., Defendants.

Civ. A. No. 74–118(R).

United States District Court, W. D. Virginia.

Aug. 26, 1975.

Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).

Raymond R. Robrecht, Salem, Va., for plaintiff.

Gerry M. Miller, Milwaukee, Wis., Norman Olitsky, Portsmouth, Va., Jack V. Place, Roanoke, Va., Hugh J. Beins, Jonathan G. Axelrod, Washington, D.C., William B. Poff, Roanoke, Va., for defendants.

## OPINION

TURK, Chief Judge.

In this suit, Ben Franklin Coleman alleges that the defendants, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereafter the "International") and Local No. 171 of the International (hereafter "Local 171"), violated the duty of fair representation owed to him by negotiating and executing a collective bargaining agreement with the Kroger Company which removed him from the Kroger Retirement Income Plan and made him subject to the union's retirement plan. The Kroger Company is also named as a defendant on the theory that they aided and abetted the unions in this alleged violation and denied him a vested right to a pension. The unions have moved to dismiss the complaint on the following grounds: (1) that the complaint fails to state a claim upon which relief may be granted; (2) that the court lacks subject matter jurisdiction over the suit; (3) that the suit is barred by the statute of limitations; and (4) that the suit is premature because plaintiff has failed to exhaust his internal union remedies or contractual remedies. The Kroger Company has joined with the unions in moving to dismiss the complaint on the above grounds and in addition has moved for summary judgment on basis that the undisputed facts reveal that plaintiff has no cognizable claim against it.

Plaintiff was employed as a truck driver by the Kroger Company at its warehouse in Salem, Virginia from January, 1947 until January, 1973.[1] During this time he was a member of the International and Local 171 which were recognized by Kroger as the collective bargaining agents for plaintiff and others. Kroger had in effect a "Retirement Income Plan" (the Kroger plan) which provided retirement benefits for its employees who met certain age and service requirements. Basically, under this plan, an employee with 15 years of "participating service" and good standing in the company was eligible for normal retirement benefits at age 65, reduced early retirement benefits at age 60, and

---

1. Plaintiff alleges that he became permanently disabled in the Spring of 1972 but was carried on the payroll until January, 1973. A memorandum from the Assistant Personnel Manager of the Kroger Company's Mid- Atlantic Marketing area indicates that plaintiff began sick leave on May 7, 1972 and was separated from the company on November 5, 1972.

disability retirement benefits at age 55. Disability retirement benefits were subject to written approval by Kroger's Board of Directors. Kroger paid the entire cost of this plan. By amendments to this plan adopted in 1956 and 1962, Kroger employees, who became subject to a union pension plan, were excluded from the Kroger plan.

The International and Kroger reached an agreement on July 13, 1970 which provided that certain employees, including the plaintiff, would be transferred from coverage under the Kroger plan and become subject to the Central States, Southeast and Southwest Areas Pension Fund (the union's plan). This change was effected as to Local 171 by a supplemental agreement dated December 23, 1970 and effective January 3, 1971. For an employee to be eligible under the union's plan, it was required that Kroger have made contributions to the union's pension fund for the employee for a period of 450 weeks—about 8½ years. Because of this requirement, which would leave certain older employees ineligible under the union's plan at retirement age, those employees who were over 56 years and 4 months of age remained subject to the Kroger plan. As of January 3, 1971, the effective date of this agreement, plaintiff was 55 years and 8 months of age.

Plaintiff left his employment with Kroger in November, 1972 because of permanent physical disability. He thereafter inquired as to his eligibility for disability retirement benefits under the Kroger plan and was informed by company officials that as of January 3, 1971 his eligibility under the plan had ceased because he was subject to the union's plan. Plaintiff accordingly looked to his local union for benefits but was informed that he was ineligible for benefits under the union's plan because Kroger had not made the requisite 450 weekly contributions on his behalf. Plaintiff filed this suit on June 28, 1974 seeking joint and several damages against the defendants for the amount of money he would have been entitled to under the Kroger plan.

■ Plaintiff initially asserted that subject matter jurisdiction over this suit was conferred by section 301 of the Labor Management Relations Act, 29 U.S. C. § 185, which authorizes suits in federal court for violations of collective bargaining agreements. It is clear that plaintiff's suit is not predicated on a breach of a collective bargaining agreement and plaintiff does not now seriously contend that jurisdiction is conferred by section 301. Instead, plaintiff now relies on 28 U.S.C. § 1337 which confers federal jurisdiction over suits arising under any Act of Congress regulating Commerce. The Labor Management Relations Act (LMRA) is unquestionably an Act of Congress regulating commerce, *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 561–562, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and therefore if plaintiff's complaint states a claim arising under the LMRA jurisdiction exists in this court.

Plaintiff's claim against the unions is based on the alleged breach of their duty of fair representation. Such a cause of action judicially evolved from sections 8(b) and 9(a) of the LMRA, 29 U.S.C. §§ 158(b) and 159(a). *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *Smith v. Local No. 25, Sheet Metal Workers*, 500 F. 2d 741, 746 (5th Cir. 1974), and thus unless this alleged violation is preempted as being within the exclusive jurisdiction of the NLRB, jurisdiction exists under 28 U.S.C. § 1337. *Retana v. Apartment, Motel, Hotel El. Op. U. Loc. No. 14*, 453 F.2d 1018, 1021 (9th Cir. 1972).

The basic test of pre-emption was stated by the Supreme Court in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 at 245, 79 S.Ct. 773 at 780, 3 L.Ed.2d 775 (1959) as follows:

> When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer

to the exclusive competence of the National Labor Relations Board . . . ."

Although this doctrine would seemingly encompass violations of a duty of fair representation, this is not necessarily the case. In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) the Court held that an employee's suit against his union for an alleged breach of the duty of fair representation was not preempted by the NLRB. This exception to the pre-emption doctrine was reaffirmed in *Amalgamated Ass'n of St., E.R. & MC. Emp. v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) where the Court stated:

> [T]his Court's refusal to limit judicial competence to rectify a breach of the duty of fair representation rests upon our judgment that such actions cannot, in the vast majority of situations where they occur, give rise to actual conflict with the operative realities of federal labor policy. The duty of fair representation was judicially evolved, without the participation of the NLRB, to enforce fully the important principle that no individual union member may suffer invidious, hostile treatment at the hands of his coworkers. Where such union conduct is proved it is clear, beyond doubt, that the conduct could not be otherwise regulated by the substantive federal law. And the fact that the doctrine was originally developed and applied by courts, after passage of the Act, and carries with it the need to adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives ensures that the risk of conflict with the general congressional policy favoring expert, centralized administration, and remedial action is tolerably slight. *Vaca v. Sipes, supra*, 386 U.S. at 180–181 [87 S.Ct. 903, at 911–912]. So viewed, the duty of fair representation, properly defined, operates to limit the scope of *Garmon* where the sheer logic of the preemption principle might otherwise cause it to be extended to a point where its operation might be unjust. *Vaca v. Sipes, supra*, at 182–183 [87 S.Ct. 903, at 912–913]. If, however, the congressional policies *Garmon* seeks to promote are not to be swallowed up, the very distinction, . . . between honest, mistaken conduct, on the one hand, and deliberate and severely hostile and irrational treatment, on the other, needs strictly to be maintained. 403 U.S. at 301, 91 S.Ct. at 1925.

Defendant unions submit that plaintiff's complaint does not come within the above-quoted exception to the pre-emption doctrine because the acts complained of were not hostile or irrational. However, plaintiff has alleged that the actions of the unions in failing to protect his interests were "arbitrary capricious, discriminatory, unreasonable and in bad faith," and given the presently undisputed facts supporting this allegation it is by no means inconceivable that upon consideration of the merits of the case, plaintiff's allegations will be sustained. In *Griffin v. UAW*, 469 F.2d 181 (4th Cir. 1972), the court stated:

> Without any hostile motive of discrimination and in complete good faith, a union may nevertheless pursue a course of action or inaction that is so unreasonable or arbitrary as to constitute a violation of the duty of fair representation. 469 F.2d at 183.

In *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790 (2nd Cir. 1974) the court similarly stated:

> While it is true that situations in which a union violates its duty have been identified by such phrases as 'hostile discrimination,' [citations omitted], and 'arbitrary, discriminatory,' or 'bad faith' conduct, *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), these phrases do not delimit specific categories of violations of the duty of fair representation. They only serve to emphasize that the union has broad discretion to adjust the demands of competing groups within its constituency as

long as it does not act arbitrarily. . . . Bad faith or hostile discrimination is certainly a sufficient condition to evidence an irrational decision, but it is not a necessary condition. It is also sufficient that a distinction be arbitrary or not based on some rational consideration." 495 F.2d at 798. The court is accordingly of the opinion that plaintiff's claims against the unions are not preempted by the NLRB and state a cause of action against the unions cognizable by this court.

■ Since there is no federal statute of limitation specifically applicable to this suit, the court must look to the most appropriate state statute. *International Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–705, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Plaintiff and Kroger contend that § 8–13 of the Virginia Code providing as three-year limitation period for actions based on express or implied contracts is applicable to this action.[2] Alternatively, plaintiff argues that § 8–24 of the Virginia Code which provides a five-year limitation period for personal actions which survive the death of an injured party is applicable to this suit; whereas the unions argue that the one-year limitation period of § 8–24 for personal actions which do not survive is applicable.

■■ The characterization of plaintiff's suit as one in "tort" or "contract" is a matter of federal law. *International Union v. Hoosier Corp., supra* at 706, 86 S.Ct. 1107. Although both plaintiff and Kroger contend that the limitation period governing contracts should be applied to this case, the court is unable to perceive the suit as being fairly characterized as a contract action. Plaintiff concedes that the suit does not involve a breach of the collective bargaining contract,[3] but rather asserts that the contract between himself and Kroger is the *sine qua non* of the lawsuit. However, the contract of employment with Kroger was the collective bargaining agreement. Plaintiff's suit is based on the unions' alleged breach of a duty and Kroger's complicity in such breach. As such, the complaint clearly sounds in tort and the court therefore will apply the Virginia limitation period governing tort suits. *Accord, Sanderson v. Ford Motor Co.*, 483 F.2d 102, 114 (5th Cir. 1973); *DeArroyo v. Sindicato de Trabajadores Packinghouse, AFL–CIO*, 425 F.2d 281, 286–287 (1st Cir.), *cert. denied*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).

■ The question next presented therefore is whether the one-year or five-year limitation period of § 8–24 of the Virginia Code should govern this suit, which in turn requires a determination of whether such a suit would survive the death of the plaintiff. Pertinent to this determination is section 64.-1–145 of the Virginia Code which provides for the survival of actions "at law for money damages . . . for the waste or destruction of, or damage to, any estate of . . . decedent." In

2. Whether plaintiff's suit would be time barred under this statute depends upon when his cause of action accrued. Kroger argues that his cause of action arose and the statute began to run on January 3, 1971 when the collective bargaining agreement transferring plaintiff to the union plan became effective. On the other hand, plaintiff argues that the cause of action did not accrue until he became disabled in the spring of 1972.

3. *In Butler v. Teamsters, Local 823*, 514 F. 2d 442 (8th Cir. 1975) and *Abrams v. Carrier Corp.*, 434 F.2d 1234 (2nd Cir. 1970),

*cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) the courts applied a state limitation period governing contract actions to suits against unions based on a breach of the duty of fair representation, however these cases also involved claims against the employer for allegedly violating the collective bargaining agreement. The case at bar does not involve an alleged breach of the collective bargaining agreement and thus the rationale of *Butler* and *Abrams* that the same limitation period should apply to the employer and union in such cases is inapplicable.

*Barnes Coal Corp. v. Retail Coal Merchants Ass'n.*, 128 F.2d 645 (4th Cir. 1942) Judge Parker, in applying the Virginia statute of limitations governing torts to a federal anti-trust suit stated the basic rule as to whether an action survives:

> [A]ctions for torts in the nature of personal wrongs, such as slander, libel, malicious prosecution, etc., die with the person, whereas, if the tort is one affecting property rights, the action survives. 128 F.2d at 649.

However, even in cases of torts affecting property rights, the rule which has evolved is that survivability depends upon a direct, as opposed to an indirect or consequential injury to the property. *Carva Food Corp. v. Dawley*, 202 Va. 543, 118 S.E.2d 664 (1961); *Richmond Redevelopment & Housing Authority v. Laburnum Construction Corp.*, 195 Va. 827, 80 S.E.2d 574 (1954).

 Although this court looks to state decisions in determining whether an action is one which would survive, the determination of whether an action based on a federal statute would survive is a matter of federal law. *Barnes Coal Corp., supra* at 648. In the instant case, the court has no doubt that the interest of the plaintiff which was harmed by the alleged breach of the duty of fair representation was as a matter of federal law, a property interest. In this case, plaintiff's property interest was not the traditional "vested" interest in a pension fund, but rather was an objective expectation, nurtured over a period of 24 years of service with Kroger, that he would receive a pension if he became unable to work after age 55.[4] *See generally Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The court further concludes that the injury to this property interest caused by the union's alleged breach of their duty of fair representation was direct and not consequential. If he can prove his allegations, plaintiff will have shown that as a direct result of arbitrary and irrational representation he was deprived of the security afforded by Kroger disability plan. *See Blackwelder v. Millman*, 522 F.2d 766 (4th Cir. 1975.) The Court thus believes that a suit of this nature survives, *i.e.*, if plaintiff were to die before litigating this suit, his personal representative could maintain a fair representation suit against the unions for the disability pension he would have received up until his death. The court accordingly concludes that the five-year limitation period of § 8–24 of the Virginia Code is applicable to this suit, and since plaintiff's complaint was filed within this period, the motion to dismiss based on the statute of limitations will be denied.

Plaintiff submits and defendants do not deny that when he inquired about disability benefits, officials of Kroger told him that he would have to seek benefits under the union's plan but that when he asked local union officials about disability benefits he was told that noth-

---

4. *See generally Goldberg v. Kelly*, 397 U.S. 254 at 262 N. 8, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) where the Court quoted Reich, *Individual Rights and Social Welfare: the Emerging Legal Issues*, 74 Yale L.J. 1245, 1255 (1965) as follows:

"[s]ociety today is built around entitlement. The automobile dealer has his franchise, the doctor and lawyer their professional licenses, the worker his union membership, contract and pension rights, the executive his stock option; all are devices to aid security and independence. Many of the most important of these entitlements now flow from government: subsidies to farmers and businessmen, routes for airlines and channels for television stations; long term contracts for defense, space and education; social security pensions for individuals. Such sources of security, whether private or public, are no longer regarded as luxuries or gratuities; to the recipients they are essentials, fully deserved, and in no sense a form of charity. It is only the poor whose entitlements, although recognized by public policy, have not been effectively enforced."

ing could be done because he was not eligible under the union's plan. Now, however, the defendants urge the court that plaintiff's efforts to litigate this claim are premature because he has failed to exhaust his contractual or intra-union remedies.

■ Since plaintiff is not asserting that there has been a breach of the collective bargaining agreement and it is apparent that his grievance is not subject to being resolved by an interpretation or application of such agreement, it would be futile for him to pursue his contractual remedies. Similarly, intra-union remedies do not appear to offer plaintiff a realistic means of resolving his claim against the unions. The defendant unions do not specify the procedure by which plaintiff claim against them could be fairly adjudicated administratively, and from the court's consideration of the Constitution of the International it does not appear that the intra-union remedies available offer plaintiff a realistic possibility of achieving the relief he seeks in this suit. *See Lucas v. Philco-Ford Corp.*, 380 F.Supp. 139 (E.D.Pa.1974). For these reasons, further exhaustion of intra-union or contractual remedies is unnecessary. *See Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Petersen v. Roth Packing Co.*, 461 F.2d 312 (8th Cir. 1972); *Retana v. Apartment, Motel, Hotel & El. Op. U., Local No. 14*, 453 F.2d 1018 (9th Cir. 1972).

■ As noted, the court finds that plaintiff has stated a cognizable claim against the unions for an alleged breach of their duty of fair representation. Such a claim cannot be maintained against an employer for the simple reason that no such duty exists on the employer's part. Plaintiff, however, would hold Kroger jointly and severally liable with the unions on the bases that

(1) Kroger aided and abetted the unions in breaching their duty of fair representation and (2) that in agreeing to the collective bargaining agreement Kroger deprived plaintiff of a vested right to which he was entitled by virtue of his service to the company. Neither of these theories is persuasive.

■ With respect to plaintiff's contention that he was deprived of a vested right to a pension under the Kroger plan, it is important to consider the specific nature of the plan. In the case of disability retirement benefits, among other things, the plan specifically required approval by Kroger's Board of Directors. The plan also provided that employees who became subject to a union retirement plan were no longer covered by the Kroger plan. In January, 1971 when the collective bargaining agreement made plaintiff subject to the union's plan, he was not disabled and had no legitimate claim to benefits. His expectation for benefits under the Kroger plan was expressly contingent on certain factors and was thus not a vested right. *Compare Oddie v. Ross Gear and Tool Co.*, 305 F.2d 143 (6th Cir. 1962); *Rothlein v. Armour and Co.*, 377 F.Supp. 506 (W.D.Pa.1974) *with Tolbert v. Union Carbide Corp.*, 495 F.2d 719 (4th Cir. 1974) and *Hauser v. Farwell, Ozmun, Kirk & Co.*, 299 F.Supp. 387 (D.Minn.1969).

There is in addition a more fundamental reason why plaintiff cannot seek to hold Kroger jointly and severally liable with the unions in this case. Kroger was under a mandatory (*i.e.* statutory) obligation to bargain with the unions over pension and retirement plans, 29 U.S.C. § 158(a)(5); *Inland Steel Co. v. N.L.R.B.*, 170 F.2d 247 (7th Cir. 1948), and in fulfilling this obligation it agreed to transfer employees from its retirement plan to the union plan. However, Kroger did not share the union's duty to protect the employees' interests, but to the contrary it was expected to represent its own interests which would nor-

mally be antagonistic to those of its union employees. Kroger could be expected to look to the unions to represent their members' best interests, and if the union failed in this respect the court perceives no basis for holding Kroger liable with the unions.

In short, the court finds that Kroger's role in agreeing to transfer plaintiff to the union pension plan was pursuant to its statutory obligation to bargain collectively and in good faith, and the court is aware of no theory by which Kroger may be held liable to the plaintiff because of the results of such bargaining. *See Rothlein v. Armour & Co.*, 377 F. Supp. 506 (W.D.Pa.1974). Accordingly, pursuant to Fed.R.Civ.P. 56 Kroger's motion for summary judgment will be granted.

■ A final issue is presented by the unions' motion to strike plaintiff's demand for a jury trial. Support for this motion is found in *Brady v. Trans World Airlines, Inc.*, 196 F.Supp. 504 (D.Del.1961); *Harrison v. Chrysler Corp.*, 60 F.R.D. 9 (S.D.Ind.1973); *Acheson v. Bottlers Local Union 896*, 83 LRRM 2845 (N.D.Cal.1973); and *Nedd v. Thomas*, 316 F.Supp. 74 (M.D.Pa. 1970). On the other hand, *Rowan v. Howard Sober, Inc.*, 384 F.Supp. 1121 (E.D.Mich.1974); and *Lucas v. Philco-Ford Corp.*, 380 F.Supp. 139 (E.D.Pa. 1974) hold that the Seventh Amendment Constitutional right to a jury trial obtains in duty of fair representation cases in which plaintiff seeks monetary damages. Although as the above cases make clear, this issue is not free from doubt, upon consideration of such cases, the court concludes that the unions' motion to strike plaintiff's demand for a jury trial is well taken. However, the court feels that the issues in this case are not complex and the use of a jury would be desirable. Therefore, pursuant to Fed.R.Civ.P. 39(c) the court will use an advisory jury to try this case.

An order in conformity with this opinion shall be entered this day.