Dalton **PESOLA**, Plaintiff,

v.

**INLAND TOOL & MANUFACTURING, INC., et al., Defendants.**

**Civ. A. No. 5–71615.**

United States District Court, E. D. Michigan, S. D.

Sept. 29, 1976.

Ronald R. Gilbert, Charfoos & Charfoos, Detroit, Mich., for plaintiff.

Timothy Carroll, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant Inland Tool.

Ralph O. Jones, Asst. Gen. Counsel, UAW, Detroit, Mich., for defendant Unions.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The plaintiff claims that his employer, Inland Tool, discharged him in breach of its collective bargaining agreement and that his local and international unions breached their duty of fair representation in processing his grievance. Jurisdiction is founded on section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and the case is before the court now on motions for summary judgment filed by the defendants. Among the questions presented for decision are: (1) Which statute of limitations governs a claimed breach of the duty of fair representation? (2) What is the effect of internal union appeals upon the running of the statute? On these questions, the court holds that Michigan's statute of limitations for injuries to persons and property governs fair representation claims and that the statute is tolled during the pendency of internal union procedures.

Dalton Pesola was hired May 13, 1968 and worked until September 17, 1970, when he was discharged for "excessive absenteeism." His record reflected 220 absences in 1969 and 35 absences in 1970, most of them traceable to a serious injury suffered from an automobile accident in 1969 and related corrective surgery. His supervisor felt that he was taking many more sick days than his medical problems actually required. Inland admits that it did not follow all the steps of the contractually specified procedure for discharging employees for absenteeism.

On September 18, 1970, the local union filed a grievance protesting the discharge. The grievance was processed through the first three steps of the grievance procedure within the next four days. The unit committee and the local's president decided that Pesola's attendance record was too poor to warrant arbitration of his grievance. Subsequently, Pesola demanded a strike vote on his discharge. The local membership voted against a strike. Pesola appealed, and on February 17, 1971, the local's executive board ordered the president to demand arbitration. The local's president did demand arbitration, but the company refused on the grounds that the claim lacked merit and that the demand for arbitration was not timely. Union officials informed Pesola that Inland refused to arbitrate, but apparently they failed to mention that the union's untimely demand for arbitration was a factor in Inland's decision.

*Claims Against the Union—Statute of Limitations.*

On October 26, 1972, Pesola filed a complaint in state court against Inland. Nearly three years later, on August 4, 1975, he amended his complaint to add the local and international unions as defendants. The unions argue that the action against them is barred by Michigan's three-year statute of limitations governing personal injury claims. Mich.Comp.L.Ann. § 600.5805(7). Pesola argues in response that his claim against the union is not barred, because the correct standard is the six-year statute of limitations governing contract actions. Mich.Comp.L.Ann. § 600.5807(8). In addition, Pesola argues that the limitations period on his claim against the unions did not start running until he learned, through the discovery process in January, 1975, that the local's demand for arbitration was not timely.

■ Statutory limitations periods are intended to prevent unfair and prejudicial surprises:

" 'The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' " *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974).

Congress did not specify a limitation period for actions under section 301. The governing limitations period is the most appropriate state statute. *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Gray v. Heat and Frost Insulators, Local 51*, 416 F.2d 313 (6th Cir. 1969).

Federal law determines which state statute is the most appropriate one, *Hoosier Cardinal, supra*, 383 U.S. at 706, 86 S.Ct. 1107; *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1251–52 (2d Cir. 1970), but the circuits have identified a variety of "appropriate" limitations periods. See, e. g., *Butler v.*

*Teamsters, Local 823*, 514 F.2d 442 (8th Cir. 1975), *cert. denied*, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1976) (limitations period governing contractual claims); *Abrams, supra* (case-by-case determination, looking to nature of the union's alleged act of commission or omission; if claim against the union is that it failed to enforce plaintiff's contractual rights, contracts statute governs); *De Arroyo v. Sindicato de Trabajadores Packing*, 425 F.2d 281, 286–87 n.6 (1st Cir. 1970) (limitations period governing tort actions); *Gray v. Heat and Frost Insulators, supra* (Kentucky's statute governing duties created by statute); *Nedd v. UMW*, 400 F.2d 103, 105–106 (3d Cir. 1968) (tort statute). In accord with *De Arroyo* and *Nedd* are *Sanderson v. Ford Motor Co.*, 483 F.2d 102, 114 (5th Cir. 1973); *Coleman v. Kroger Co.*, 399 F.Supp. 724, 729 (W.D.Va. 1975).

■ The problem of determining the appropriate limitations period for a fair representation claim against the union is complicated by the relationship such a claim bears to the breach of contract claim against the employer. The employer is shielded from liability under section 301 if the union's processing of the employee's grievance was not arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Breach of the union's duty must be established as a prerequisite to recovery against the employer, and evidence against the union must be introduced regardless of whether the union is or can be joined as a party defendant. Stale evidence and jaded memories must be summoned to serve the plaintiff even if the statute of limitations appropriate for claims against the union has run.

For these and related reasons, the Eighth Circuit decided that the most appropriate limitation period for a claim against the union is the one governing the claim against the employer. See *Butler, supra*. In *Gray*, however, the Sixth Circuit implicitly declined to define the limitations period for claims against the union by the statute governing claims against the employer. Claims against the union in this circuit are

governed by the most appropriate state statute for breaches of the duty of fair representation. Under Kentucky law, the most appropriate state statute is the one which governs statutory duties.

■ There is no statute governing statutory duties under Michigan law. In the absence of such a statute, the most logical state analogue for fair representation claims is the tort statute, rather than the contract statute. The claim against the union is that it did a wrongful act—it breached its fiduciary duty to a member— and thereby injured that person. This is a claim having all the indicia of a tort. See *De Arroyo, supra; Sanderson, supra; Nedd, supra.* Therefore, it is governed by Michigan's three-year tort statute. Mich.Comp. L.Ann. § 600.5805(7). *Smart v. Ellis Trucking Co., Inc.,* 409 F.Supp. 129 (E.D.Mich. 1976); cf. *Field v. UAW AFL–CIO, Local 652,* 6 Mich.App. 140, 148 N.W.2d 552 (1967).

■ The statute cannot begin to run until a cause of action accrues to the plaintiff. It may be argued that this point was not reached until Pesola exhausted his internal union appeals on February 17, 1971, when the executive board rendered a decision on his appeal. However, exhaustion of internal union appeals is not an element of the cause of action. It is a requirement based on strong federal policies favoring the quick resolution of such disputes without judicial interference. *Ruzicka v. General Motors Corp.,* 523 F.2d 306, 311–12 (6th Cir. 1975). This policy is tempered by equitable considerations that may excuse a failure to exhaust in certain circumstances.

See, e. g., *Ruzicka, supra; Day v. UAW, Local 36,* 466 F.2d 83 (6th Cir. 1972). Pesola's cause of action accrued when he was injured by the union: on September 22, 1970, when the unit committee and local president decided not to demand arbitration. The court concludes, therefore, that the statute began to run on that date.

■ However, the same policy considerations that strongly favor resort to internal union procedures make it imperative to avoid penalizing plaintiffs for resorting to such procedures. It is clear that the statute should be tolled during the pendency of internal union procedures.[1]

The basic inquiry in determining whether a limitation period should be tolled is "whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett v. New York Central R. Co.,* 380 U.S. 424, 427, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). Federal labor policy is clearly served by tolling the statute pending the internal union appeals process. Extension of the limitation period to accommodate internal union procedures is appropriate for the simple reason that exhaustion of those procedures is a prerequisite to suit under section 301. Tolling is desirable, as well, as a means of promoting the strong policy favoring private resolution of such labor disputes. It also serves to guard against the possibility of union manipulation of mandatory internal procedures for the purpose of defeating federal claims.[2]

Therefore, the limitation period in this case began to run on September 22, 1970,

---

**1.** It may be noted that if the plaintiff's cause of action does not accrue until after he has exhausted his internal union appeals, he gains a measure of control over the running of the limitation period insofar as he may be able to delay these proceedings. It would not be tolerable to provide claimants with a means of choosing when they will start the period of limitations. Cf. *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951). On the other hand, if the statute is not tolled during the pendency of internal union appeals, the union has the power to destroy its member's cause of action under section 301 by de-

laying its proceedings past the limitation period. This result would be just as intolerable.

**2.** The cases of *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Guy v. Robbins & Myers, Inc.,* —— U.S. ——, 97 S.Ct. 441, 50 L.Ed.2d 427 (1977), present quite a different issue. Those cases held, respectively, that claims filed under Title VII, 42 U.S.C. § 2000e, do not toll the limitation period governing claims under 42 U.S.C. § 1981 and are not themselves tolled by the pursuit of contractual grievance procedures. In those cases, plaintiffs attempted to preserve a claim under one statute by pursuing independent and unrelated remedies. In this case, the pursuit of

the date the cause of action accrued by the local union's decision not to arbitrate Pesola's claim; it was tolled until February 17, 1971, when the local's executive board rendered a decision in favor of Pesola, thereby ending the internal union appeals procedure.[3] Despite the tolling of the statute, however, the limitation period expired in February, 1974—before Pesola filed his claim against the union. Therefore, the claim is barred by the statute of limitations.

■ Pesola argues that the statute did not begin running until January, 1975, when he first learned, through the discovery process, that the union's untimely demand for arbitration was a factor in Inland's refusal to arbitrate. If Pesola had pleaded fraudulent concealment, it would be appropriate to give him the benefit of section 600.5855 of the Michigan Compiled Laws, which provides that in such cases the limitations period begins to run two years from the date plaintiff discovers his claim. However, Pesola does not plead fraudulent concealment in the amended complaint or in the second amended complaint. Nor has he alleged any facts providing a basis for such a claim. He alleges, in his brief in opposition to these motions, that Inland refused to arbitrate in part because the demand for arbitration was untimely, and that union officials never brought this fact to his attention. These allegations in the brief are not sufficient to withstand a motion for summary judgment. See F.R.Civ.P. 56(e).

The court concludes that Pesola's claims against the union are barred by the statute of limitations. The union's motion for summary judgment is granted.

*Claim Against the Employer.*

■ Although the claims against the union are barred by the limitation period, the claim against the employer is not barred by the statute of limitations. Before considering the claim against the employer, however, the court must determine whether the union fairly represented Pesola in grievance proceedings against Inland and, if not, whether he exhausted his internal union remedies for his complaint against the union. Inland argues that it is shielded from liability under section 301 because neither the local nor international unions breached their duty to fairly represent Pesola, *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and because Pesola failed to exhaust his internal union remedies, *Bsharah v. Eltra Corp.*, 394 F.2d 502 (6th Cir. 1968).

■ A union breaches the duty of fair representation if its conduct toward a member is arbitrary, discriminatory, or in bad faith. *Vaca, supra.* Bad faith is not an essential element of the claim, and the negligent processing of a grievance may be arbitrary. *Ruzicka v. General Motors Corp.*, 523 F.2d 306, 311–12 (6th Cir. 1975).

■ In this case, there are no allegations supporting even a claim based on negligence. The union immediately filed a grievance, and steps 1–3 of the grievance procedure were quickly followed. Although local officials decided against arbitration, that decision was based on a duly considered judgment that Pesola's absenteeism was too excessive to be defensible before an arbitrator. Even though the local's executive board reversed the initial decision against arbitration, the fact of reversal does not establish that the initial decision was arbitrary, discriminatory, or in bad faith. It indicates only that local officials made a mistake, or, perhaps, simply a difference of opinion between the committee and the executive board. Mistakes of judgment do

internal union procedures is a *prerequisite* to the cause of action to be preserved by tolling. Furthermore, failure to toll the statute in this case would frustrate important federal policies inherent in the exhaustion requirement.

**3.** Had Pesola been dilatory in pursuing his internal union remedies, the statute would have run between the time that the union allegedly breached its duty of fair representation and the time that Pesola resorted to the internal union appeals procedure. As there is no evidence in this case of dilatory behavior, the statute may be considered tolled without interruption until February 17, 1971.

not evidence a breach of the union's duty to represent its members fairly. *Vaca, supra.*

 Pesola argues, also, that the grievance procedure "step" meetings were held in his absence, despite his requests to be present, and that he had a right to be present. In fact, however, Pesola was at that time in the hospital. The union was faced with a dilemma: if it honored his request to be present at the meetings, it probably would have been forced to adjourn the meetings past the contractual deadlines. The local officials chose, instead, to process his grievance in his absence, and to inform him of the results of the meetings. This choice was not arbitrary, discriminatory, or in bad faith; it was a responsible and intelligent reaction to a problem.

Pesola has failed to plead any facts or introduce any evidence showing that he was not fairly represented by his union. Accordingly, Inland's motion for summary judgment is granted.

So ordered.