474 F.Supp. 1284 (1979)
Abraham HARRIS, Plaintiff,
v.
JOINT PLUMBING INDUSTRY BOARD (LOCAL 2, U.S.), Harvey Rehner, John Murray, Lawrence Felder, and Michael Papalardo, Individually and in their capacities as Chairman, Co-Chairman, Treasurer, and Executive Secretary respectively, of the Industry Board, Local Union No. 2 of the United Association of Journeymen and Pipe Fitting Industry of the United States and Canada, Defendants.
Civ. No. 77-5922.
United States District Court, S. D. New York.
August 3, 1979.
*1285 Schoffman & Skovronsky, Brooklyn, N. Y., for plaintiff; Harold Skovronsky, Brooklyn, N. Y., of counsel.
Colleran, O'Hara, Kennedy, Lilly & Dunne, P. C., Garden City, N. Y., for defendants; Robert A. Kennedy, Stephen J. Smirti, Jr., Garden City, of counsel.

OPINION FINDINGS OF FACT AND CONCLUSIONS OF LAW
EDWARD WEINFELD, District Judge.
Plaintiff, Abraham Harris, has been a member of Local 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry ("Local 2" or "Union") since 1941 and an active plumber by trade for twenty years, 1941-1949 and 1962-1972, with a fourteen-year "hiatus" in which he owned and managed a toy store. He commenced this action against the Joint Plumbing Industry Board ("Industry Board"), four of its officers, and his Union, seeking a declaration of entitlement to pension benefits under the 1952 Trust Agreement between the Union and the employers with which it has collective bargaining agreements. The Industry Board, composed of representatives of Local 2 and the employers, administers the Pension and Welfare Fund ("Fund") established pursuant to that agreement for the benefit of members of the Union. Harris was denied pension benefits in August 1972 on the basis of his failure to qualify under the eligibility rules of the Fund as amended in 1966 and 1971. He challenges the amended rules as arbitrary and unreasonable either for all purposes or as applied to him. Contending that the amendments were secretly adopted and that the employees, the intended beneficiaries of the Fund, were not informed of these changes, he further charges all defendants with fraud and deceit and Local 2 with a breach of its duty of fair representation. This Court has both federal question[1] and diversity jurisdiction[2] of the claims asserted.

I
In 1950, Local 2 and the Association of Contracting Plumbers of the City of New York entered into a collective bargaining agreement which provided for the establishment of the Fund to be financed solely by employer contributions and administered by *1286 the Industry Board in accordance with the provision of the Taft-Hartley Act that such funds be maintained for "the sole and exclusive benefit of employees."[3] By Agreement and Declaration of Trust dated January 2, 1952, the Fund and the Industry Board were formally created. Pursuant to the terms of the Trust Agreement, the Trustees were empowered to make, amend and repeal such rules as they deemed necessary or proper to carry out the provisions of the Agreement. Exercising this power, the Trustees in 1952 promulgated the initial rules and regulations ("the Plan") setting forth pension eligibility requirements, to wit: (A) attainment of age 65; (B) at least 15 years membership in the Union; (C) of which five years immediately preceded the date of application for retirement; (D) employment of any duration by a contributing employer in each of the two years preceding the date of application, unless waived because of illness or disability, and (E) 1,250 days of employment at the plumbing trade during his membership in the Union.
The only link in these requirements between employer contributions to the Fund and the employees' qualification for benefits is requirement "D"that the employee be employed by a contributing employer for an unspecified number of days during the two years preceding his application for benefits. A booklet distributed to union members during the 1960s describing the plan indicated that in satisfying the requisite 1,250 working days in requirement "E", credit would be given "for employment by a plumbing contractor prior to the establishment of our benefit plan."
With the exception of the addition of a disability retirement provision in 1960, the next substantial amendment to the Plan occurred in 1963. To comply with rulings of the National Labor Relations Board, union membership was eliminated as a condition of eligibility; instead, employment with a contributing employer, regardless of union membership, qualified a retiree for pension benefits. The provisions requiring fifteen years of union membership, five of which preceded retirement were deleted in their entirety.[4] The net effect of the 1963 *1287 amendment was that an employee would qualify if he (1) attained the age of 65 or became disabled prior thereto, (2) had been employed for an unspecified number of days by a contributing employer during the two years preceding his application for benefits, and (3) had accumulated 1,250 days of contributory employment.
In 1966, the Plan was again amended. All prior conditions of eligibility, except those relating to age, were deleted and a new provision was substituted which required fifteen consecutive years of contributory employment immediately prior to retirement, during which period the Fund must receive contributions on the employee's behalf for at least 1,250 days of work.
Finally, in 1971 the Plan was amended to provide an alternative means of qualifying for benefits by accumulating 2,100 days of contributory employment through fifteen years of "unbroken credited service," a break deemed to occur if the employee had not had two quarters of employmentthirty-five days per calendar year constituting ¼'s creditwithin any three consecutive calendar years. A vesting provision was added with respect to this alternative. In 1972 a new pension information booklet was prepared reflecting the current amendments and distributed to employees.

II
As noted earlier, Harris worked for nine years in the plumbing trade from 1941-1949. Because of the scarcity of plumbing jobs in the New York metropolitan area during this period, he was required to travel to various parts of the United States where he was referred to plumbing concerns by other locals affiliated with the international union. Because of illness and inability to obtain steady work closer to home, Harris opened a toy store which he operated until 1962. When the plumbing business began to pick up in the early 1960s, Harris sold his store and in January 1962 returned to full employment in the plumbing trade and continued in the industry through August 1972 when illness forced him to retire. In that eleven-year period, he worked eight full years of approximately 250 days per year; a partial year of 130 days in 1966 due to a six-month long strike; a partial year of 101 days in 1970 when he suffered a heart attack; and 139 days in 1972 when by August he was completely disabled by his cardiac condition and began to receive federal disability benefits. In all, he accumulated approximately 2,370 days of contributory employment distributed over an eleven-year period. When he advised an officer of the Industry Board that he wished to apply for retirement benefits, he was informed that he was not eligible because of his failure to meet the required fifteen consecutive years of contributory employment.

III
Although this Court may determine whether the 1966 eligibility requirements are arbitrary and capricious under either federal or state law, it is mindful of the admonition of our Court of Appeals that the federal statutory provision[5] is not a license for federal courts to invalidate an eligibility rule "simply because an agreed division of pension benefits strikes a court as unfair."[6] Since the scope of review of the eligibility requirements under state law is, if anything, broader than under federal law, and encompasses as well the issue of whether the application of otherwise reasonable requirements to a particular individual is arbitrary and capricious,[7] New *1288 York law will be applied in resolving the questions posed by this litigation.
As to the reasonableness of the 1966 amendment, this Court is bound by a recent New York Court of Appeals decision, Mitzner v. Jarcho,[8] concerning a challenge to the same pension plan, which held the amendment was reasonable on its face.[9] Under the circumstances of that case, however, the Court held that the Trustees acted arbitrarily and capriciously in applying the amendment so as to deprive the employee of benefits.[10] We are guided by the Court's analysis in making that determination.
By the time the 1966 amendments were passed, Max Mitzner had been an active plumber and union member since 1939. Except for a one-year break in service in 1961, he worked for contributory employers from the time the Fund was established. He was initially denied benefits in 1966 because he had not accumulated the required 1,250 days; he resumed employment through 1968, inquired about benefits again and, for the first time, was informed of the fifteen consecutive contributory years requirement, which he failed to meet because of the 1961 break in service. In holding the Trustees' decision to withhold benefits arbitrary, the Court weighed "the duty owed [by the Trustees] to the retired membersto provide benefitsagainst the duty owed to the fundto safeguard it from depletion for the benefit of active members who will apply for benefits in the future."[11] Although the obligation to safeguard the integrity of the Fund was furthered by the 1966 eligibility requirements, the Court noted that "no showing was made that sound actuarial practice required that this claimant be denied benefits, nor was there evidence that the amendment was adopted to avert pending financial distress."[12] With respect to the Trustees' duty to the retired employee, the Court stressed three factors: (1) Mitzner, because of his length of service in the plumbing trade, was clearly an intended beneficiary of the pension plan; (2) the amendment as retroactively applied stripped him of all credit for twenty-one years of contributory and non-contributory service predating the 1961 break; (3) Mitzner was not informed of the amendment until 1968, two years after its adoption.[13]
Applying this analysis to the facts of Harris' case, we likewise find the denial of benefits was arbitrary. Despite the significant change the 1966 amendments wrought in the eligibility requirements, no attempt was made to notify the employees in writing of the amendmentwhether by letter, the distribution of booklets as was done in the 1960s and again in 1972, or by simply posting notices with plumbing contractors and in the union hall. Although a defense witness, Morris Olshina, testified that several "special meetings" of the union were held to discuss the general business of the Industry Board and at various times the amendments were a point of business, neither Harris nor his witness, Morris Indursky, who attended with regularity because of his political aspirations, learned of the amendments at union meetings. On Olshina's own testimony, the earliest Harris personally learned of the fifteen-year requirement *1289 was in 1970 after he suffered his heart attack. When significant changes are made in pension plans, altering prior rules and adversely affecting those entitled to benefits, due regard for the employees' interests requires that fiduciaries inform them by adequate notice and not rely upon the happenstance of irregular attendance at meetings at which the subject may or may not be brought up.[14]
Also like Mitzner, Harris is clearly an intended beneficiary of the Plan. With close to twenty years of service in the plumbing trade, eleven of which were with contributing employers, and almost double the required number of contributory days, Harris is not an undeserving claimant who sought to take advantage of the previously loose eligibility requirements. Yet the 1966 amendment was applied so as to strip him of all credit for his nine years of service predating the establishment of the Fund to which he was entitled under the Plan as originally adopted. By the time the 1966 amendment was passed, except for age, he had met all the requirements of the 1952 rules, which were all he was aware of on the basis of the 1960 information booklet, and he was well on his way to completing the 1963 requirement of 1,250 days of contributory employment. Finally, his inability to meet the 1966 requirements, which, considering the number of contributory days he had amassed could have been satisfied with one day of contributory employment in each of the next four years, was involuntary as a result of his disabling cardiac condition.
With respect to the Trustees' obligation to the Fund, no evidence of financial impairment was proffered. In fact, the level of benefits was increased in 1966 and steadily thereafter to a high in 1972 of $10 per month times the employee's years of service. Moreover, none of the purposes underlying the 1966 amendment is furthered by denying this plaintiff benefits. The actual contributions to the Fund made on his behalf, calculated in terms of contributory days, far exceeded the required number. Olshina testified that the 1966 amendment was passed to prevent an employee who had amassed his contributory employment early in his career at lower contribution rates, left the trade and then returned for a brief two-year period before he retired from reaping the benefit of current high contribution rates. But Harris is not that hypothetical retiree; his contributory employment all occurred in the eleven years immediately preceding his retirement. Further, the argument is somewhat undercut by the vesting provision added in 1971 and the fact that, for purposes of computing the level of benefits, a retiree is given credit for years of service prior to the Fund's establishment. Finally, to the extent the fifteen-year requirement was intended to ensure loyalty to the trade, Harris' lengthy record of service is a clear indicator of his worthiness.
In finding that the denial to Harris of benefits was arbitrary, we stress that this is an individual determination. The fifteen contributory years requirement is reasonable and it is not suggested that any claimant who meets the required number of contributory days in less than that number of years is thereby entitled to benefits.[15] Rather, we simply find that as to this plaintiffwho *1290 demonstrated his loyalty to his craft and union over an extended period of time, exceeded by almost double the contribution requirements and at high current rates, and then was involuntarily prevented from complying with the final requirement, of which he had no prior notice, by a disabling illnessthe rules were arbitrarily applied. For the foregoing reasons, Harris is entitled to receive pension benefits computed from September 1972. Defendants' subsidiary contention that Harris' failure to file a formal application bars his recovery is denied as the Court finds the Trustees' improperly discouraged him from doing so.[16]
Plaintiff's request for compensatory and punitive damages is denied. No evidence of actual injury other than the denial of benefits was offered. As to the request for punitive damages against the Union on the theory of unfair representation, even if we were to find the Union's duty extended to this situation, the recent Supreme Court decision in International Brotherhood of Electrical Workers v. Foust,[17] prevents the assessment of punitive damages against a union for a breach of this duty. Similarly as to the Industry Board and its officers, even if we were to find that their failure to formally disclose the 1966 amendment satisfied the elements of fraud and deceit, which we do not, there is no evidence of "gross, wanton or wilful fraud" warranting an award of punitive damages.[18] Finally, the request for attorney's fees is denied. Plaintiff's "victory" is personal, limited to the particular facts of his case, and has not created a "common benefit" for other pensioners.[19]
The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law. Judgment may be entered accordingly.
NOTES
[1] 28 U.S.C. § 1331; 29 U.S.C. § 186(e).
[2] 28 U.S.C. § 1332. Plaintiff is a citizen of New Jersey; the defendants are citizens of New York.
[3] 29 U.S.C. § 186(c)(5); see Arroyo v. United States, 359 U.S. 419, 425-26, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959).
[4] Defendants contend that the 1963 amendment, in substituting contributory employment wherever reference to union membership appeared in the rules, changed the former requirement of 15 years union membership to 15 years contributory employment. This ignores the fact that the 1963 amendment completely deleted the 15-year provision. Nonetheless, defendants rely upon an Appellate Division decision which accords with their interpretation of the 1963 amendment, Huffe v. Jarcho, 64 A.D.2d 960, 408 N.Y.S.2d 793, 794 (1st Dep't 1978), and assert that this Court, sitting in diversity, is bound by that decision. Since Harris has only 11 years of contributory employment, which disregards his 9 years in the trade prior to creation of the Fund, they argue we need not reach his challenge to the 1966 amendment.

It is recognized that when the highest court of the state has not spoken, the decision of an intermediate state court is an important "datum" to be considered in construing state law. Commissioner v. Estate of Bosch, 387 U.S. 456, 477, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (Harlan, J., dissenting); West v. A. T. & T. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Six Companies of California v. Joint Highway District, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (1940). But here the Appellate Division did not purport to construe the 1963 amendment, but rather to follow the Court of Appeals decision with respect to the same pension plan in Mitzner v. Jarcho, 44 N.Y.2d 39, 403 N.Y.S.2d 490, 374 N.E.2d 388 (1978). Thus it quoted not the 1963 amendment, but the language of the Court of Appeals opinion stating that the 1963 amendment substituted contributory employment for union membership. But with due respect, it misconstrued that opinion, for the Court of Appeals further noted that before 1966 one could qualify for benefits after only a "very brief period." Id. at 47, 403 N.Y.S.2d at 494, 374 N.E.2d 388. Obviously, 15 years is not a brief period. In Mitzner, the Court affirmed the decision of the Appellate Division, Second Department which described the pre-1966 rules as requiring only 1,250 days of contributory employment. Mitzner v. Jarcho, 58 A.D.2d 860, 396 N.Y.S.2d 687, 688 (2d Dep't 1977). Moreover, the Court of Appeals not only had the text of the 1963 amendment before it, Record on Appeal at 613-14, but the respondent-appellee advanced the same interpretation of the 1963 amendment there, although for different purposes, as the defendants urge here. Brief for Respondent-Appellee at 11. In nonetheless characterizing the pre-1966 eligibility rules as requiring only minimal contributory employment, the Court of Appeals quite clearly rejected that interpretation of the 1963 amendment. We are bound by the decision of the higher court and therefore reject defendants' reliance on Huffe. See also Agro v. Joint Plumbing Industry Board, 471 F.Supp. 856 (S.D.N.Y.1979).
[5] 29 U.S.C. § 186(c)(5).
[6] Riley v. MEBA Pension Trust, 570 F.2d 406, 412-13 (2d Cir. 1977) (Friendly, J.); accord, Lugo v. Employees Retirement Fund, 529 F.2d 251, 255 (2d Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976).
[7] We cannot review the application of these rules to an individual claimant under federal law. Cuff v. Gleason, 515 F.2d 127, 128 (2d Cir. 1975); see Beam v. International Org. of Masters, 511 F.2d 975, 978 (2d Cir. 1975).
[8] 44 N.Y.2d 39, 403 N.Y.S.2d 490, 374 N.E.2d 388 (1978). Other cases considering the pension plan include Agro v. Joint Plumbing Industry Board, 471 F.Supp. 856 (S.D.N.Y.1979); Kraft v. Felder, 452 F.Supp. 933 (S.D.N.Y. 1978); Walkes v. Jarco, N.Y.L.J., at 7, col. 1 (Sup.Ct. July 28, 1978), aff'd sub nom. Schulman v. Jarcho, App.Div., 418 N.Y.S.2d 409, N.Y.L.J., at 10, col. 2 (1st Dep't 1979); Huffe v. Jarcho, N.Y.L.J., at 5, col. 2 (Sup.Ct. Nov. 14, 1977), aff'd mem., App.Div., 407 N.Y.S.2d 826 (1st Dep't 1978), vacated on reargument, 64 A.D.2d 960, 408 N.Y.S.2d 793 (1st Dep't 1978).
[9] 44 N.Y.2d at 47, 403 N.Y.S.2d at 494, 374 N.E.2d 388.
[10] Id.
[11] Id. at 45, 403 N.Y.S.2d at 493, 374 N.E.2d at 391.
[12] Id. at 47, 403 N.Y.S.2d at 494, 374 N.E.2d at 392.
[13] Id. at 46, 403 N.Y.S.2d at 494, 374 N.E.2d 388.
[14] See Burroughs v. Board of Trustees, 542 F.2d 1128, 1131 (9th Cir. 1976), cert. denied, 429 U.S. 1096, 97 S.Ct. 113, 51 L.Ed.2d 543 (1977); Kosty v. Lewis, 115 U.S.App.D.C. 343, 347-48, 319 F.2d 744, 748-49 (1963); Moch v. Durkin, 31 A.D.2d 995, 297 N.Y.S.2d 865 (3d Dep't 1969).
[15] For example, in Walkes v. Jarco, N.Y.L.J., at 7, col. 1 (Sup.Ct. July 28, 1978), aff'd sub. nom. Schulman v. Jarcho, App.Div., 418 N.Y.S.2d 409, N.Y.L.J., at 10, col. 2 (1st Dep't 1979), one of the six claimants, Battaglini, was denied benefits despite 14 consecutive years of covered employment. However, he had not been stripped of past service credits and his retirement was voluntary. Similarly, in Agro v. Joint Plumbing Industry Board, 471 F.Supp. 856, 78 Civ. 2454 (RS) (S.D.N.Y. May 11, 1979), the plaintiff, whose entitlement to benefits was eventually secured by virtue of a "grandfathering clause," had voluntarily accepted a more lucrative position abroad from 1966-1969 and in the six years immediately preceding his retirement had worked for contributory employers in only two years and for a total of only 190 days.
[16] See Agro v. Joint Plumbing Industry Board, 471 F.Supp. 856, (S.D.N.Y. 1979); Mitzner v. Jarcho, 44 N.Y.2d at 47, 403 N.Y.S.2d at 495, 374 N.E.2d 388.
[17] ___ U.S. ___, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). Moreover, we have serious doubts whether the duty of fair representation extends beyond the areas outlined in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), that is, the negotiation and enforcement of collective bargaining agreements. Cf. Knoll v. Phoenix Steel Corp., 325 F.Supp. 666 (E.D.Pa. 1971), aff'd, 465 F.2d 1128 (3d Cir. 1972), cert. denied, 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257 (1973) (union and employer negotiated amendment to provision of Trust agreement); Smith v. DCA Food Indus., Inc., 269 F.Supp. 863 (D.Md.1967) (amendments to pension plan resulted from collective bargaining); Kaminsky v. Connolly, 41 N.Y.2d 1068, 396 N.Y.S.2d 176, 364 N.E.2d 841 (1977) (mem.) (no breach of duty shown where union refused to enforce employer contribution requirement).
[18] Borkowski v. Borkowski, 39 N.Y.2d 982, 387 N.Y.S.2d 233, 355 N.E.2d 287 (1976); Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961); Greenspan v. Commercial Ins. Co., 57 A.D.2d 387, 395 N.Y.S.2d 519 (3d Dep't 1977).
[19] Fase v. Seafarers Welfare & Pension Plan, 589 F.2d 112 (2d Cir. 1978).